IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JOSHUA DWANE BACON | Removed from the Court of Common Pleas

   Plaintiff, *pro se,* | of Luzerne County Civil No. 2023-03307

       |

   v. | [JUDGE MARIANI]

       |

LUZERNE COUNTY, ET AL., | NO. 3:23-CV-01699-RDM-CA

   Defendants, | Filed via USPS Certified Mail on April 2, 2024

Represented by Sean P. McDonough, Esq. |


**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION**

**FOR SUMMARY JUDGEMENT**

FILED
SCRANTON

APR 0 5 2024

PER _____
   DEPUTY CLERK

# TABLE OF CONTENTS

TABLE OF CONTENTS                                                                    i-ii

I.      INTRODUCTION                                                                  1

II.     STATEMENT OF FACTS                                                            1

        A.      SUMMARY OF FACTS                                                      1

        B.      PROCEDURAL HISTORY                                                    4

III.    REBUTTAL OF QUESTIONS PRESENTED                                              4

        A.      WITH REGARD TO THE WRONGFUL DISCIPLINARY CONFINEMENT
                PLACEMENTS, SHOULD BACON'S CLAIMS OF VIOLATIONS OF THE
                EIGHTH AND FOURTEENTH AMENDMENTS UNDER THE U.S.
                CONSTITUTION BE UPHELD ON THE GROUNDS THAT THE
                DEFENDANTS' ACTIONS CAUSED UNDUE MENTAL HEALTH
                DETERIORATION?                                                        4

        B.      WITH REGARD TO THE TWO INSTANCES OF ASSAULT BY OTHER
                INMATES, SHOULD BACON'S CLAIMS OF VIOLATIONS OF THE EIGHTH
                AND FOURTEENTH AMENDMENTS UNDER THE U.S. CONSTITUTION
                BE UPHELD ON THE GROUNDS THAT THE DEFENDANTS HAD
                OPPORTUNITIES TO PREVENT HARM TO THE PLAINTIFF AND DID NOT
                DO SO?                                                                5

        C.      WITH REGARD TO THE MUNICIPAL LIABILITY CLAIM AGAINST
                LUZERNE COUNTY, DOES THE PLAINTIFF STATE A LEGITIMATE
                CLAIM FOR MUNICIPAL LIABILITY ON THE GROUNDS THAT
                LUZERNE COUNTY CORRECTIONAL FACILITY HAS SET POLICIES
                THAT ALLOWED FOR WRONGFUL DISCIPLINARY CONFINEMENT
                PLACEMENT FOR PREA INVESTIGATIONS WITHOUT
                DUE PROCESS?                                                          5

        D.      WITH REGARD TO THE MUNICIPAL LIABILITY CLAIM AGAINST
                LUZERNE COUNTY, DOES THE PLAINTIFF STATE A LEGITIMATE
                CLAIM FOR MUNICIPAL LIABILITY ON THE GROUNDS THAT LUZERNE
                COUNTY CORRECTIONAL FACILITY HAS UNOFFICIAL PRACTICES
                THAT ALLOWED BACON TO BE HOUSED ON THE SAME BLOCK AS

KEZIAH, A PREDATORY INMATE?                                              5

IV.    ARGUMENT                                                              5

       A.    STANDARD OF REVIEW                                             5

       B.    DEFENDANTS ARE NOT ENTITLED TO SUMMARY
             JUDGEMENT ON MR. BACON'S EIGHTH AMENDMENT
             FAILURE TO PROTECT CLAIMS                                      5

       C.    DEFENDANTS ARE NOT ENTITLED TO SUMMARY JUDGEMENT ON
             MR. BACON'S EIGHTH AND FOURTEENTH AMENDMENT CLAIMS OF
             INJURY TO PLAINTIFF'S MENTAL HEALTH CONDITION RESULTING
             FROM WRONGFUL DISCIPLINARY CONFINEMENT                         8

       D.    DEFENDANTS ARE NOT ENTITLED TO SUMMARY JUDGEMENT ON
             MR. BACON'S MUNICIPAL LIABILITY CLAIMS RELATED TO MENTAL
             HEALTH INJURY RESULTING FROM WRONGFUL DISCIPLINARY
             CONFINEMENT, DELIBERATE INDIFFERENCE, AND FAILURE TO
             PROTECT FROM ASSAULT BY AN INMATE                             13

V.     CONCLUSION                                                          15

       TABLE OF CITATIONS                                                  16

       CERTIFICATE REGARDING WORD COUNT                                    17

       CERTIFICATE OF SERVICE                                              18

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOSHUA DWANE BACON, | \| Removed from the Court of Common Pleas |
| Plaintiff, *pro se,* | \| of Luzerne County Civil No. 2023-03307 |
| v. | \| [JUDGE MARIANI] |
| LUZERNE COUNTY, ET AL. | \| NO. 3:23-CV-01699-RDM-CA |
| Defendants, | \| Filed via US Postal Service on April 2, 2024 |

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGEMENT

### I.      INTRODUCTION

Plaintiff Joshua Bacon brings this lawsuit pursuant to 42 U.S.C. § 1983 due to the violation of his rights under the Eighth and Fourteenth Amendments of the U.S. Constitution. This lawsuit consists of two types of claims, wrongful placement in disciplinary confinement with deliberate indifference to the inmate's documented severe mental health issues, resulting in the reduction of daily functions, and two instances of failure to protect from assault by another inmate. During his two years of incarceration at Luzerne County Correctional Facility, Bacon spent a total of forty-six days in the Restricted Housing Unit ("RHU") under investigations that were never found to have any merit, and while housed in the RHU, he was assaulted by inmate Kyle PENNINGTON, an individual with extremely acute unidentified mental health issues and a long history of assaults on inmates and staff alike. Additionally, Bacon was assaulted in Administrative Segregation by inmate Joshua KEZIAH, a violent individual placed in Administrative Segregation to protect others in general population from him because he was a predator. Bacon is an individual on the Autism Spectrum, who was later sentenced under the Guilty but Mentally Ill statute, and exhibits documenting and proving this diagnosis have been provided to the court. For the reasons discussed below, Defendants' Motion for Dismissal should be denied in its entirety.

### II.      STATEMENT OF FACTS

#### A. SUMMARY OF FACTS

Defendants' statement of facts on pages 2-6 remain mostly undisputed, but for clarity they will be repeated here. At all times mentioned in this complaint, plaintiff was a prisoner at Luzerne County Correctional Facility. Plaintiff was diagnosed in 2006 with Autism Spectrum

Disorder ("ASD") and Attention Deficit Hyperactive Disorder ("ADHD"), and expert reports have been provided to all parties to support this diagnosis. Plaintiff has struggled greatly throughout his childhood and adult life due to his difficulty making and keeping friends, inability to understand nonverbal social cues, and overall inability to connect appropriately with his peers. He struggles to relate to others, others struggle to relate to him, and as a result, he is vulnerable and easily victimized. He is sometimes unable to understand why his conduct is inappropriate, rude, or offensive. In addition to these facts, plaintiff is extremely susceptible to peer pressure because he wants to fit in and be accepted by his peers. When these facts are considered, it becomes obvious that plaintiff could be easily victimized, bullied, extorted, and ostracized in a prison setting. What the defendants fail to mention in their brief is that the plaintiff, his family, and his attorney made abundantly clear to the medical department, psychiatric and psychology departments, and administration from day one that Bacon suffers from severe Autism and needed to be protected during his time in their facility. Additionally, plaintiff often told individual officers of his condition, especially when he was being mistreated, including **all named defendants in this civil action**. No defendant in this action can rightfully claim they were unaware of the plaintiff's condition at any point in time. Despite taking these precautions, plaintiff was harassed, bullied, extorted, sexually harassed, physically assaulted, was subjected to multiple unwarranted investigations, and was placed under conditions that were unethical and unconstitutional.

      Plaintiff's first claim is of wrongful palcement in the RHU for a total of forty-six days, occurring on the following dates: March 31, 2021 to April 23, 2021; May 14, 2021 to May 28, 2021; July 2, 2021 to July 9, 2021. All of these RHU placements were the result of unwarranted PREA investigations that lacked merit, and in the case of the July 2nd incident, a wrongful misconduct charge that was dismissed. Defendants argue there is a lack of personal involvement of any of the named defendants for these incidents, but this is not true. For the incident on March 31, 2021, defendants Deborah SCHLOSS, Kaitlynn ROMISKI, and Jamie AQUILLA were directly involved in the wrongful RHU placement, and are being sued in their individual and official capacities. For the incident on May 14, 2021, defendants Jamie AQUILLA and Deborah SCHLOSS were directly involved in the wrongful RHU placement, defendant SKIPALIS was responsible for transporting the plaintiff to the RHU and was responsible for the loss and destruction of personal belongings, and all three are being sued in their individual and official

capacities. Defendant Randal WILLIAMS is being sued in his individual and official capacity because he frequently made wellness check rounds in the RHU and on Administrative Segregation and spoke with plaintiff on several occasions, promising to get him out of the RHU and to alleviate issues with staff members, but failed to do so on several occasions. Additionally, because grievances were filed and denied or ignored relating to these incidents, defendant Christina OPRISHKA-BEYER is responsible in her individual and official capacity because she was the facility grievance coordinator and failed to take appropriate action to prevent injury to the plaintiff. In fact, defendant OPRISHKA-BEYER returned only two grievances in Bacon's entire two year stay at LCCF, while over two dozen grievances were ignored or "lost".

The third incident, where the plaintiff was wrongfully confined for eight days beginning on July 2, 2021, involves both wrongful RHU placement as well as failure to protect from attack by another inmate. For the wrongful RHU placement aspect of this incident, defendants David WITKOSKY and David STEEVER were directly involved in the decision to issue a misconduct and place plaintiff in the RHU, despite knowledge that Bacon was innocent and was in fact the victim of a brutal assault by another inmate. Defendant Deborah SCHLOSS is also responsible because the decision was made to open a PREA investigation in addition to the pending misconduct, preventing the plaintiff from being released on July 5th by defendant MULHORN. Defendant MULHORN is responsible because he knew that both the misconduct and the PREA investigation were inappropriate and false, and still allowed Bacon to spend five additional days in the RHU (July 5-9). For the failure to protect aspect of this claim, defendants WITKOSKY, STEEVER, and SKIPALIS were scheduled to work on the block and refused to intervene in the assault for several minutes. Additionally, plaintiff made several attempts prior to July 2nd to inform defendants WITKOSKY, STEEVER, SKIPALIS, WILLIAMS, HRIVNAK, and SWEET that he was afraid of inmate Joshua KEZIAH and directly informed them that KEZIAH was attempting to extort him and threatened him with physical harm if he did not pay. No action was taken, and therefore all of these defendants are responsible in their individual and official capacities.

Plaintiff's second claim involves two incidences of failure to protect an inmate from assault by another inmate, one of which is listed in the paragraph above. The first incident took place on April 6, 2021, when the plaintiff was assaulted by inmate Kyle PENNINGTON while being housed in the RHU, and the second incident took place on July 2, 2021, when the plaintiff

was assaulted by inmate Joshua KEZIAH, an inmate that has previously threatened Bacon. The assault by PENNINGTON left Bacon with minor bruises and severe psychological trauma, as he now feels that he cannot trust any future cellmate as a result of the attack. The assault by KEZIAH left Bacon with two black eyes, two teeth that are now permanently misaligned, a third tooth that was knocked out of his mouth and had to be surgically reattached, lacerations to his face and neck, severe bruising to his jaw and cheekbones, and a fractured nose, as well as severe psychological trauma that forced him to isolate himself from the general population for over a year. Even now, three years later, Bacon still fears assault from other inmates, often avoiding areas that are out of sight of officers, such as the game room on his current honor block at SCI-Chester. When combined with his distrust for cellmates because of the attack by PENNINGTON, plaintiff is now in a state of constant paranoia and fear of attack.

B. PROCEDURAL HISTORY

Plaintiff filed the original complaint in this action *pro se* on March 22, 2023. Because the first event in this complaint occurred on March 31, 2021, all events covered within this complaint are well within the two year statute of limitations provided by the Commonwealth of Pennsylvania. The claim was reinstated on September 13, 2023 by the County Clerk's office, the time delay was due to a pending IFP application. Defendants were served with a copy of the complaint on September 14, 2023. On October 12, 2023, defendants filed a Notice of Removal from the Luzerne County Court of Common Pleas to the United States District Court for the Middle District of Pennsylvania, as the complaint states a Federal Question. On October 19, 2023, Defendants filed a Motion to Dismiss for Failure to State a Claim, and a supplementary extension of time to submit a written brief. This brief was filed on November 30, 2023, and received several days later. Plaintiff filed for two extensions, once for ninety days, the second for thirty days, making the deadline April 4, 2024. Mr. Bacon now files this Brief in Opposition to Defendants' Motion to Dismiss.

**III.    REBUTTAL OF QUESTIONS PRESENTED**

A) With regard to the wrongful disciplinary confinement placements, should Bacon's claims of violations of the Eighth and Fourteenth Amendments under the U.S. Constitution be upheld on the grounds that the defendants' actions caused undue mental health deterioration?

*(Suggested Answer: In The Affirmative)*

B) With regard to the two instances of assault by other inmates, should Bacon's claims of

violations of the Eighth and Fourteenth Amendments under the U.S. Constitution be upheld on the grounds that the defendants had opportunities to prevent harm to the plaintiff and did not do so?

*(Suggested Answer: In The Affirmative)*

C) With regard to the municipal liability claim against Luzerne County, does the plaintiff state a legitimate claim for municipal liability on the grounds that Luzerne County Correctional Facility has set policies that allowed for wrongful disciplinary confinement placement for PREA investigations without due process?

*(Suggested Answer: In The Affirmative)*

D) With regard to the municipal liability claim against Luzerne County, does the plaintiff state a legitimate claim for municipal liability on the grounds that Luzerne County Correctional Facility has unofficial practices that allowed Bacon to be housed on the same block as KEZIAH, a predatory inmate?

*(Suggested Answer: In The Affirmative)*

## IV.   ARGUMENT

### A. STANDARD OF REVIEW

At this time, plaintiff believes summary judgement is inappropriate on these issues. "All that is required to survive a summary judgement motion is that 'sufficient evidence supporting the claimed factual dispute be show to require a judge or jury to resolve the parties' differing versions of the truth at trial'." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986).

### B. DEFENDANTS ARE NOT ENTITLED TO SUMMARY JUDGEMENT ON MR. BACON'S EIGHTH AMENDMENT FAILURE TO PROTECT CLAIMS

Bacon was assaulted twice while in the custody of Luzerne County Correctional Facility; on April 6, 2021 by inmate Kyle PENNINGTON while housed in the RHU, and on July 2, 2021 by inmate Joshua KEZIAH, an inmate that officers were aware had previously threatened Bacon. Both of these assaults could have been and should have been prevented, and the failure to do so on the defendants' part amounts to both failure to protect as well as deliberate indifference. In the case of PENNINGTON, defendants William HALL, Paul RICHARDS, Randal WILLIAMS, David WITKOSKY, and David STEEVER all had extensive personal experiences with inmate PENNINGTON, and it is likely that other defendants in this action are familiar with him as well. PENNINGTON is an individual who has been incarcerated dozens of times for a variety of

incidents related to his severe mental illness, and has been in and out of Luzerne County Correctional Facility for over a decade. All above named defendants were aware of PENNINGTON's violent and unpredictable tendencies, and the threat he posed to others, particularly vulnerable inmates. At the time of the incidents, PENNINGTON was being held in the RHU for an assault on another inmate in Administrative Segregation. Defendants HALL and RICHARDS conspired to place Bacon in the cell with PENNINGTON, knowing and disregarding the risk to his personal safety. According to HALL, his reasoning was that "he had heard [Bacon's] name around and [he] sounded like a real dickhead, and someone had to teach [Bacon] a lesson." He stated that PENNINGTON "wasn't so bad" and joked that "he probably won't eat his own shit very often", literally referring to PENNINGTON's tendency to eat his own feces from the toilet. Thus, it is reasonable to assume that being placed in a cell with PENNINGTON caused Bacon to be incarcerated under conditions posing a substantial risk of harm.

As for the assault by KEZIAH, this requirement is also met because Bacon had previously informed defendants WITKOSKY, STEEVER, SKIPALIS, and WILLIAMS, as well as other John Doe defendants whose names Bacon does not recall, of the risk KEZIAH posed to his safety. Plaintiff states he recalls a particular incident prior to July 2, 2021, where KEZIAH got in BACON's face and threatened to "beat the shit out of him" if he didn't pay his "poker debt". Bacon asserts that he had never played poker with anyone in jail or accrued any debt, and that "poker debt" was code for "rent to live on the block", i.e. extortion. Bacon informed the officers on duty that day, which included WITKOSKY and STEEVER, and other John Doe defendants whom he could not identify, of the incident and requested that KEZIAH be moved or kept separate from him. Because there is only one Administrative Segregation block at Luzerne County Jail, Bacon was unable to move off the block for safety, and his only option was to ask officers to keep him separate from KEZIAH or ask that KEZIAH be moved back to M-Block (general population). Bacon did not file a grievance because a grievance form was not provided to him that day or the following several days, despite his request. In that instance, adminstrative remedies were made unavailable to Bacon. Prison adminstrative remedies are unavailable "when prison adminstrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation". *Ross v. Blake,* 578 U.S. at 643. Because Bacon's request to be kept separate from KEZIAH was ignored, deliberate indifference was

shown to Bacon's safety, and this incident also passes the first requirement for failure to protect.

The second requirement is that the inmate must show that the official knows and disregards an excessive risk to the plaintiff's health and safety; the official must both be aware of the facts from which the inference could be drawn, and also draw that inference. In the case of PENNINGTON, defendants HALL and RICHARDS meet this standard, as they made incriminating statements to the plaintiff that the purpose of housing him with PENNINGTON was to "teach him a lesson", meaning they intended for Bacon to suffer in some way. Whether or not it was their intention for PENNINGTON to assault Bacon is unknown, but given that they knew his history and the likelihood of violence towards a cellmate, paired with their indifference for Bacon's well-being, it becomes clear that if these defendants did not know, they should have known. "A factfinder may find it obvious that an official knew of a substantial risk from the very fact that the risk was obvious." *Farmer*, 511 U.S. at 842. **PENNINGTON was considered a single-cell inmate ("Z-Code") for much of his time at Luzerne County Correctional Facility.** Plaintiff firmly believes that this can be proven by discovery should this claim proceed. Additionally, *Farmer* goes on to state, "It does not matter...whether a prisoner faces an excessive risk of attack for reasons personal to him or because all prisoners in his situation face such a risk." (511 U.S. at 843). In this case, any cellmate of PENNINGTON's faced the same risk as Bacon, defendants chose to subject Bacon to this risk. Defendant WILLIAMS meets this standard as well, because Bacon did inform him that he felt unsafe in the cell with PENNINGTON on at least one cell integrity/wellness check between March 31, 2021 and April 5, 2021. Bacon informed WILLIAMS that he felt unsafe in the cell with PENNINGTON and requested to move cells, because there was at least one other RHU bed open at the time, and he was told that it was not likely to happen that day.

In the case of KEZIAH, this standard is met by defendants WITKOSKY, STEEVER, SKIPALIS, and WILLIAMS, as well as several other John Doe defendants unknown to the plaintiff. Plaintiff directly informed these individuals in plain English, and the message was clear -- inmate KEZIAH was attempting to extort him and threatened him with physical harm if he did not comply. These officers made the decision that since they did not hear the encounter first-hand (which was impossible because there were no officer physically present in the yard) that the complaint was illegitimate and could be safely ignored. Unfortunately, they were wrong, and the results caused real harm to Bacon. These defendants knew KEZIAH from M-Block as

well as Administrative Segregation, and knew he presented a legitimate threat, especially to an inmate considered vulnerable. KEZIAH had been placed in the RHU several times before for assaults and fighting, which all of these officers were aware of. Again, if these defendants did not know, they should have known of the risk. Therefore, both incidents pass the second test.

The Eighth Amendment places a duty on prison officials "to protect prisoners from violence at the hands of other prisoners." *Farmer*, 511 U.S. 825, 833. Prison conditions may be harsh, but "being violently assaulted in prison is simply not 'part of the penalty that criminal offenders pay for their offenses against society'." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). To survive summary judgement on a failure to protect claim, a plaintiff must establish that (1) the harm is "objectively, sufficiently serious" and (2) the prison official has "a sufficiently culpable state of mind". *Beers-Capitol v. Whetzel*, 256 F.3d 125 (quoting *Farmer*, 511 U.S. at 834).

"Deliberate indifference is a subjective standard" whereby the plaintiff must show that the defendants were actually "aware of the excessive risk to inmate safety". *Beers-Capitol v. Whetzel*. However, an inmate "need not show that a prison official acted or failed to act believing that harm would actually befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Farmer*, 511 U.S. at 842.

C. DEFENDANTS ARE NOT ENTITLED TO SUMMARY JUDGEMENT ON MR. BACON'S EIGHTH AND FOURTEENTH AMENDMENT CLAIMS OF INJURY TO PLAINTIFF'S MENTAL HEALTH CONDITION RESULTING FROM WRONGFUL DISCIPLINARY CONFINEMENT

In the Defendants' Brief, they argue that any disciplinary confinement while in prison, even wrongful confinement, does not violate a protected liberty interest and cite several case citations where plaintiffs spent months, sometimes years, in Restricted Housing Units with no relief. While they are correct in stating that, generally speaking, incarcerated individuals do not have a right to be housed in general population, the basis for this claim is not the wrongful disciplinary confinement itself, rather, it is the conditions that inherently exist within solitary confinement that exacerbate and deteriorate one's mental health, especially those with underlying mental health issues. **Plaintiff's argument is, in some ways, a case of first impression, and asks the question: "Do incarcerated individuals with a severe mental health diagnosis have a Constitutionally protected liberty interest in avoiding conditions that exacerbate or deteriorate their mental health stability?"**

The Defendants claim that there is a lack of personal involvement of any of the named defendants in the wrongful placement in disciplinary confinement, which is false. Plaintiff clearly states in his complaint that the following defendants were involved in the wrongful disciplinary confinement as follows: In the first incident, where the plaintiff was wrongfully confined for twenty-four days in the Restricted Housing Unit, taking place between March 31, 2021 and April 23, 2021, defendants Kaitlynn ROMISKI, Jamie AQUILLA, and Deborah SCHLOSS were directly involved in the wrongful disciplinary confinement. All three of these defendants are therefore sued in their individual and official capacities. In the second incident, where the plaintiff was wrongfully confined for fourteen days in the Restricted Housing Unit, taking place between May 14, 2021 and May 28, 2021, defendants Jamie AQUILLA and Deborah SCHLOSS were directly involved in the wrongful disciplinary confinement, defendant SKIPALIS was responsible for transporting plaintiff to the Restricted Housing Unit and was responsible for the destruction and loss of personal belongings, making all three responsible in their individual and official capacities. The third incident, where the plaintiff was wrongfully confined for eight days, took place between July 2, 2021 and July 9, 2021. Because this third incident is also involved in the *failure to protect* claim, I am only focusing on the wrongful disciplinary confinement aspect of this incident, and only actions taken by defendants related to this part of the claim will be listed. Defendants David WITKOSKY and David STEEVER were directly involved in the decision to issue a misconduct and place plaintiff in the Restricted Housing Unit, despite knowledge that the plaintiff was innocent and was in fact the victim of a brutal assault by another inmate. Defendant Deborah SCHLOSS is responsible in this incident as well, because the decision was made to open a PREA investigation in addition to the misconduct, which prevented plaintiff from being released from the RHU on July 5, 2021 by defendant MULHORN. Additionally, because grievances were both filed and denied relating to these incidents, defendant Christina OPRISHKA-BEYER is responsible in her individual and official capacities because she was the facility grievance coordinator and failed to take appropriate action to prevent harm. Defendant Samuel HYDER denied the appeals to these grievances, also failing to take appropriate action, and is therefore responsible in his individual and official capacities. Defendant Randal WILLIAMS is responsible in all three of these incidents because as a Lieutenant that frequently visited the RHU, he had the ability to have Bacon removed from the RHU and placed on another block pending investigation, and on multiple occasions promised

Bacon that he would move him out of the RHU, but this never materialized. Defendant WILLIAMS failed to use his authority to prevent harm to the plaintiff, and is therefore being sued in his individual and official capacities. Defendant James WILBUR is responsible in his individual and official capacities because as an officer of the facility, holding the rank of Captain, Bacon wrote him several request slips in hopes he would intervene and have him removed from the RHU, and in other instances, have him placed on a safer block than the 5A Administrative Segregation block, and in one instance also spoke with WILBUR in person, where he told Bacon that Luzerne County Correctional Facility had "no obligation to house him on a block where he felt safe", and in fact stated that "he had the authority to place [Bacon] wherever he felt like". Captain James WILBUR was deliberately indifferent to the suffering that Bacon was enduring at that time.

On pages 12 and 13 of the Defendants' Motion to Dismiss, Defendants claim that this claim does not meet the requirements for a due process violation because it does not allege that the plaintiff was deprived of an individual liberty interest encompassed within the Fourteenth Amendment, and plaintiff must look to state law for a remedy. This is not true, and comparing this case to prisoners' lawsuits complaining of lengthy disciplinary confinement sentences is not a reasonable lens to look through. It is important to remember that unlike most other prisoners, Bacon has been diagnosed with Autism Spectrum Disorder, and this is the determining factor in this claim. For an individual on the Autism Spectrum, even a single day under Restricted Housing Unit conditions is too much, let alone forty-six. It is also important to remember that at no point in time was Bacon convicted of any misconduct or found guilty of any PREA violation. To determine the scope of the liberty interests deprived of Bacon in those forty-six days, one must analyze them through the eyes of a person on the Autism Spectrum. Loss of yard and block out time would be detrimental and punitive to most individuals, but to an individual on the Autism Spectrum, lack of social contact can, and in this case did, lead to the loss of important social skills. Prior to his incarceration, plaintiff struggled greatly with socialization with his peers, and underwent many years of therapy, TSS/MT services, support groups, and psychiatrist and psychologist visits to build the social skills that he retained at the age of nineteen. This cost can certainly be represented in dollar amounts, i.e. the cost of therapy and professional support, etc, but this does not display the cost of the personal autonomy that was lost as a result of this disciplinary confinement. The Luzerne County Defendants cannot claim to be ignorant to this

damage, as multiple attempts were made to reach out to the psych department during this time in the RHU to rectify the situation at the time. Additionally, plaintiff lost the ability to have in-person visits (due to COVID-19), leaving video visits on the tablet as his only way to see his friends and family, which was not permitted in the RHU. The phone time offered to him was minimal and offered at times when his family members were at work or school, with no attempt to offer different phone call times, rendering contact with his family effectively unavailable. This loss of contact with his external support system, when coupled with the traumatic experience of being stripped of his property, placed in an uncomfortable and unfamiliar cell, and socially isolated, created an environment that was traumatizing and harmful, with an extremely negative effect on the plaintiff and exacerbating his mental health issues. Plaintiff argues that this deprivation, when considering the lasting mental health effects, amounts to loss of liberty. Defendants argue, "Importantly, the Fourteenth Amendment itself creates no substantive right or liberty interest proscribing an inmate's placement in disciplinary custody", but the liberty interest here is not preferable housing within a prison setting, rather, it is the right to avoid conditions that exacerbate and deteriorate one's mental health that is the protected liberty interest that was lost. On page 15, Defendants argue, "Here, Bacon's placements in disciplinary custody for 24 days and then 14 days [this brief mistakenly omits the third incident of eight days in the RHU] were the only restraints he experienced because of the allegedly defective misconduct hearings". For clarity, these were not defective misconduct hearings (for the first two incidents of 24 and 14 days, respectively), rather, they were falsified PREA complaints that led to extended investigations, none of which led to any substantial evidence. Defendants SCHLOSS, ROMISKI, AQUILLA, and potentially others conspired to keep Bacon in the Restricted Housing Unit despite any real evidence of these allegations. Defendants then go on to cite case citations where plaintiffs were held for longer periods in disciplinary confinement without any relief, but they fail once again to understand that the protected liberty interest is not the confinement itself, but the end result of that confinement, namely, negative long-term mental health effects. When we talk about the other losses, such as loss of drug and alcohol therapy meetings, law library access (meaning lack of access to the courts), and religious services (meaning restriction of the First Amendment right to freedom of religious expression), these are universally recognized as legitimate liberty interests in and of themselves, in some form, and their deprivation, while not a claim by themselves, is nonetheless significant.

Defendants also argue that this *wrongful disciplinary confinement resulting in mental health deterioration* claim cannot be construed as an Eighth Amendment Conditions of Confinement claim. The law states that a prisoner must show that the condition deprived him of "a single, identifiable human need". Plaintiff argues once again that stable mental health is a Constitutional right under the Eighth Amendment, to some degree. Whether this falls under personal safety, medical care, or another category is up for discussion, but it is clear that the United States Constitution entitles one to be free from conditions that severely impact one's mental health. The law also states that the plaintiff must show that the prison official subjectively acted with a sufficiently culpable state of mind, i.e. deliberate indifference. "A prison official's conduct violates the Eighth Amendment only if he knows that the inmate faces a substantial risk of serious harm or disregards that risk by failing to take reasonable measures to abate it". Here, plaintiff alleges that because he informed all of the defendants many times of his condition and of the effects the disciplinary confinement placement was having on his mental health, all defendants knew or should have known about his condition. The defendants could have avoided their actions, they could have (and later did) placed Bacon on a different block rather than in the RHU, or attempted to make accomodations to abate the punitive aspects of the placement because, as defendant SCHLOSS stated in one interview, "Placement in the RHU [was] not intended to be a punishment, merely a separation from the individuals who filed the complaint."

On page 18, Defendants' Brief states, "First, Bacon's claim of being placed in the Restricted Housing Unit for approximately 38 days [actually 46 days] during his disciplinary proceedings [again, PREA investigations, not disciplinary proceedings], without more, does not implicate a sufficiently serious deprivation". **The key words here are "without more", because there is more. The "more" here is Autism Spectrum Disorder, which amplifies the effects of the disciplinary confinement exponentially.** *Nyhuis v. Reno* states, "Segregated detention is not cruel and unusual punishment *per se*, as long as the conditions of confinement are not foul, inhumane, or totally without penological justification" (204 F.3d 65, 71 n.7). Here, plaintiff's claim includes inhumane treatment given his mental condition, and also is totally without penological justification, as there were other places that defendants could have housed the plaintiff, such as the 2A block where they later kept the plaintiff during a PREA investigation at a later date. There is also no penological justification as to why privileges could not be restored while being held in the RHU, such as phone, tablet, and yard privileges, considering plaintiff was

allegedly "not being punished" (referring to Defendant SCHLOSS's comments above). Moving on, the defendants assert that the privileges lost were "minor" and "insignificant", but I ask you -- is the inability to keep in contact with loved ones for extended periods of time while simultaneously losing contact with other human beings for several weeks at a time, insignificant? I think most people would be abhorred by this treatment, as we saw during the COVID-19 crisis, let alone if it happened to someone with a serious mental illness (i.e. Autism). Defendants state on page 19, "Bacon also fails to plausibly plead the subjective element of his conditions of confinement claim: deliberate indifference to a prisoner's health or safety." Here, the argument is again simple, because mental health is a recognized form of health, and therefore falls under conditions of confinement. This allegation, to be clear, is being made against the following defendants in their individual and official capacities: SCHLOSS, ROMISKI, AQUILLA, STEEVER, OPRISHKA-BEYER, WITKOSKY, WILLIAMS, HYDER, WILBUR, and ROCKAVITCH.

   D. DEFENDANTS ARE NOT ENTITLED TO SUMMARY JUDGEMENT ON MR. BACON'S MUNICIPAL LIABILITY CLAIMS RELATED TO MENTAL HEALTH INJURY RESULTING FROM WRONGFUL DISCIPLINARY CONFINEMENT, DELIBERATE INDIFFERENCE, AND FAILURE TO PROTECT FROM ASSAULT BY AN INMATE

   On page 24 of Defendants' Motion, they assert that "Bacon's Section 1983 claim against the County should be dismissed because he has not identified any policy, practice, or custom of Luzerne County that caused his alleged injury". In this section, Plaintiff will demonstrate that Luzerne County, and by extension, Luzerne County Correctional Facility, has created several unofficial "customs" and "practices" that caused his injuries. Bacon's municipal claim is not a case of *respondeat superior*, but instead shows a pattern of behavior that is permitted and accepted even at the highest levels of administration within the facility, behavior that has also been inflicted upon other inmates in similar situations, therefore creating a "custom" or "practice". **Policies need not be formal to support municipal liability. Cities and counties may be held liable for Constitutional violations caused by a "custom or usage" that is "so permanent and well settled" as to have "the force of law".** *Monell v. New York Dept of Social Services,* 436 U.S. at 690-691. A practice may constitute such a custom or usage if it is "persistent and widespread", "long-standing", or "deeply embedded". (*St. Louis v. Praprotnik,* 485 U.S. 112, 127, 108 S. Ct. 915 [1988]; *Anela v. City of Wildwood*, 790 F.2d 1063 [3d Cir.

1986]; *Doe v. Claiborne County*, 103 F.3d 495, 507 [6th Cir. 1996]). Many courts have held that municipalities can be held liable for customs even if their policymakers do not have actual knowledge of them. *Baron v. Suffolk County Sheriff's Dept,* 402 F.3d 225, 236-237 (1st Cir. 2005).

In the case of the *mental health injury caused by wrongful disciplinary confinement* claim, Plaintiff believes that this injury was completely avoidable but for the practices of Luzerne County, which require inmates accused of PREA violations to be held in the RHU pending investigation, even if the claim has no merit and the staff is aware that the claim has no merit. This "policy" was later changed when plaintiff was held on the 2A block during another frivolous PREA investigation in approximately September 2021 (this incident is not included in the suit, as no Constitutional violations occurred here, but instead Plaintiff points to this "change of policy" as proof that the policy/custom itself directly caused harm to him and could have been easily changed).

Additionally, when it comes to the claims surrounding failure to protect from inmate on inmate assault and deliberate indifference, Plaintiff states that Luzerne County has created several customs. First, Luzerne County Correctional Facility allows the Administrative Segregation block to be used for both individuals who are in fear for their lives as well as individuals who are a threat to the security of the institution. This places those who voluntarily sign in for protection to be placed at risk. In the case of the assault by Keziah, an inmate placed in Administrative Segregation because he was a threat to the safety of inmates in general population, his presence inherently posed a risk to everyone who was in Administrative Segregation for their protection. Luzerne County Correctional Facility makes no distinction between those individuals in Administrative Segregation for protection and those involuntarily placed in Administrative Segregation because they pose a significant threat to other inmates. Luzerne County Correctional Facility does have a Protective Custody block, but this block is only for individuals with sex-based offenses, and individuals seeking protection who do not have a sex-based offense are not permitted to live on the Protective Custody block or take Protective Custody. Second, Luzerne County Correctional Facility claims they do not have a block set up for individuals with mental health issues needing additional care and support, which is a policy that has harmed the plaintiff severely. If Bacon was allowed to live on a block similar to the RTU/SNU blocks in the state prison system, he likely could have avoided being assaulted by

KEZIAH, and his quality of life would have been exponentially better. Bacon did inquire about the 2D block, which was designated as a "psychiatric block", but was told he did not qualify simply because his bail exceeded the arbitrary $250,000 limit, placing him as a "maximum security inmate". Luzerne County placed more weight on Bacon's pending criminal charges than on his verified mental illness (Autism Spectrum Disorder) that put him at risk in prison. These three claims all meet the standard for policies and customs created by the municipality for which it should be held liable. All of these policies could have been easily changed or fixed to prevent injury, and yet these changes were not made.

## V.    CONCLUSION

For the foregoing reasons, this Court should deny Defendants' Motion to Dismiss and for Summary Judgement in its entirety. All claims presented within this complaint are sufficiently argued to support a meaningful review by this Court, and should proceed to the next phase of trial preparation. All claims state a legitimate claim(s) upon which relief can be granted.

## Table of Citations

**CASES**                                                                    **PAGE #**

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986)...................................     5

Anela v. City of Wildwood, 790 F.2d 1063, 1069 [3d Cir 1986].............................     13

Baron v. Suffolk County Sheriff's Dept, 402 F.3d 225, 236-237 (1st Cir. 2005).......     14

Beers-Capitol v. Whetzel, 256 F.3d 120, 125 (3d Cir. 2001)...................................     8

Doe v. Claiborne County, 103 F.3d 495, 507 [6th Cir. 1996]..................................     14

Farmer v. Brennan, 511 U.S. 825, 833, 834 (1994)...................................................     7, 8,

Monell v. New York City Dept of Social Services, 436 U.S. at 690-691.................     13

Nyhuis v. Reno, 204 F.3d 65, 71 n.7 (3d Cir. 2000)...................................................     12

Rhodes v. Chapman, 452 U.S. 337, 347 (1981)..........................................................     8

Ross v. Blake, 578 U.S. at 643....................................................................................     6

St. Louis v. Praprotnik, 485 U.S. 112, 127, 108 S. Ct. 915 [1988]...........................     13

## CERTIFICATE REGARDING WORD COUNT

I, JOSHUA DWANE BACON, *pro se* litigant, hereby certify **to the best of my ability** that body of the foregoing brief is approximately 5,304 words in length. This amount is well within the 6,500 word limit granted by Judge Mariani.

Please note that this document was typed using Wordpad on a prison computer, which does NOT have a word count feature, so this word count was done manually. Articles such as "a", "an", "the", and "of" were **NOT** included in the word count, all titles and headings were counted in this word count, and human error is always a factor, so this word count is approximate to the best of my ability.

**Date: April 2, 2024**

Respectfully Submitted,

JOSHUA D. BACON

Plaintiff, *pro se*

SCI-Chester QN6521

500 East 4th Street

Chester, PA 19013

## CERTIFICATE OF SERVICE

I, Joshua Dwane Bacon, hereby certify that on the 2nd day of April, 2024, I served a copy of the foregoing, PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGEMENT, upon the persons indicated below as follows:

## VIA USPS CERTIFIED MAIL, POSTAGE PREPAID;

UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

U.S. Post Office and Courthouse

Scranton, PA 18503

Respectfully Submitted,

JOSHUA D. BACON

Plaintiff, *pro se*

SCI-Chester QN6521

500 East 4th Street

Chester, PA 19013



Josh Bacon Qw6971
Sci-Chester
500-East 4th Street
Chester, PA 19013

LEGAL MAIL!

RECEIVED
SCRANTON
APR 05 2024
PER
DEPUTY CLERK

CERTIFIED MAIL

7020 2450 0000 9585 3728

USMS X-RAY

US POSTAGE
ZIP 19013
02
0000358303 APR 02 2024
$ 010.40°