## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOSHUA DWANE BACON, | : | Civil No. 3:23-cv-1699 |
| | : | |
| Plaintiff | : | (Judge Mariani) |
| v. | : | |
| | : | |
| LUZERNE COUNTY, *et al.*, | : | |
| | : | |
| Defendants | : | |

### MEMORANDUM

Plaintiff Joshua Bacon ("Bacon"), an inmate in the custody of the Pennsylvania Department of Corrections ("DOC"), commenced this civil rights action in the Court of Common Pleas of Luzerne County. (Doc. 1-1). Defendants subsequently removed the action to the United States District Court for the Middle District of Pennsylvania. (Doc. 1). Named as Defendants are Luzerne County, Luzerne County Correctional Facility, Deborah Schloss, Kaitlynn Romiski, Jamie Aquilla, Christina Oprishko Beyer, David Witkowsky, Officer Skipalis, William Spare, William Hall, Khalil Lewis, Paul Richards, David Steever, Randal Williams, James Wilbur, Samuel Hyder, Mark Rockovich, C. David Pedri, Hearing Examiner Sean Mulhorn, Officer Hrivnak, Officer Sweet, and Officer Patrick Kane.

Presently pending before the Court is Defendants' motion (Doc. 3) to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, the Court will grant the motion and dismiss the complaint with leave to amend.

## I.   Allegations of the Complaint

At all relevant times, Bacon was housed at the Luzerne County Correctional Facility. (Doc. 1-1).  Bacon is serving a 120-240-month sentence for murder in the third degree, for murdering his grandfather.  (*Id.* ¶ 6).  Bacon states that he was diagnosed with autism spectrum disorder and attention deficit hyperactive disorder in 2006, when he was six years old.  (*Id.* ¶ 2).  Bacon alleges that he has difficulty making and keeping friends, has an inability to understand nonverbal social cues, and an inability to connect appropriately with his peers.  (*Id.*).  He contends that this diagnosis makes it "obvious" that he could be "easily victimized, bullied, extorted, and ostracized in a prison setting."  (*Id.*).

On January 23, 2020, Bacon held a party at his home and used the drug Lysergic acid diethylamide ("LSD").  (*Id.* ¶ 3).  He states that he was unaware that "his brain would react differently due to his Autism Diagnosis" and that he would have a "very different, more negative experience."  (*Id.*).  After taking LSD, Bacon began to act erratic and violent, and assaulted his grandfather, ultimately resulting in his grandfather's death.  (*Id.* ¶ 4).  Early the next morning, Bacon was arrested and confined in the Luzerne County Correctional Facility.  (*Id.* ¶¶ 5, 7).

While housed at the Luzerne County Correctional Facility, Bacon alleges that he was harassed, bullied, extorted, sexually harassed, physically assaulted, and was subjected to unwarranted investigations which resulted in his placement in the restricted housing unit ("RHU").  (*Id.* ¶ 7).

2

On March 31, 2021, Defendant Kaitlynn Romiski, the Prison Rape Elimination Act ("PREA") coordinator, allegedly called Bacon into her office and asked about a complaint another inmate had lodged against him involving sexual remarks, which Bacon claims are not true. (*Id.* ¶ 8). Bacon alleges he was removed from administrative segregation and placed in the RHU as result of this untrue allegation by another inmate. (*Id.* ¶¶ 9-10). He further alleges that his placement in the RHU resulted in a loss of yard time, loss of television, music, playing games on his tablet, and reading, loss of access to drug and alcohol treatment therapy, loss of law library time, loss of religious services, loss of video visitation, reduced phone time, inability to maintain a prison job, and being housed in a small cell. (*Id.* ¶ 11). Bacon asserts that his placement in the RHU violates the DOC standards utilized by the state prison system. (*Id.*). He contends that if he was in the state prison system, he would have been placed in a Diversionary Treatment Unit. (*Id.*).

Bacon alleges that on April 6, 2021, his cellmate Kyle Pennington, who was also classified as administrative segregation, assaulted him. (*Id.* ¶¶ 12-13). During the assault, Bacon received minor bruises and was moved to another cell. (*Id.* ¶ 12). Bacon maintains that he was traumatized, and the event caused him severe distress and anguish. (*Id.* ¶ 13). After the altercation, Bacon met with Defendant Deborah Schloss, the PREA Coordinator. (*Id.* ¶ 14). After their meeting, Defendant Schloss indicated that she needed more time to complete the investigation. (*Id.*). Bacon heard back from her on April 22, 2021. (*Id.*). On April 23, 2021, the incident was determined as unsubstantiated, and Bacon was moved

from the RHU. (*Id.* ¶ 15). During this investigation, Bacon spent twenty-four days in the RHU. (*Id.*).

On May 14, 2021, Defendant Skipalis allegedly told Bacon he had to be placed in the RHU, without explanation. (*Id.* ¶ 16). Bacon claims he was scared, and that he lost his personal items during the move. (*Id.*). Defendant Aquilla later explained to Bacon that he was moved to the RHU due to another PREA violation. (*Id.* ¶ 17). Additionally, on May 15, 2021, Defendant Hall stated that several inmates signed a petition to have Bacon removed from their block for PREA violations. (*Id.* ¶¶ 17-18). Bacon alleges that on May 27, 2021, he spoke with Defendant Schloss, and she indicated that the claims lacked merit, and she released him from the RHU the next day. (*Id.* ¶ 19). Bacon alleges that he has requested the identity of the inmates who filed the petition, but Defendant Schloss refused to provide that information. (*Id.*). During this investigation, Bacon spent fourteen days in the RHU. (*Id.*).

On July 2, 2021, inmate Joshua Keziah allegedly threatened Bacon physically and verbally, attempted to extort money from him, and assaulted him. (*Id.* ¶ 21). Bacon asserts that there were no officers on the block at the time of the assault and that he sustained several injuries, including two black eyes, two teeth permanently misaligned, a third tooth was knocked out, lacerations to his face and neck, bruising to his jaw and cheekbones, a fractured nose, and emotional distress. (*Id.* ¶ 22). Defendants Witkosky and Steever transported Bacon to the medical department for treatment. (*Id.* ¶ 23). After receiving

4

medical treatment, Bacon was again moved to the RHU and charged with fighting and a PREA violation.  (*Id.* ¶ 24).

On July 6, 2021, Defendant Richards allegedly provided Bacon with a grievance form and suggested that Bacon threaten a hunger strike to get out of the RHU.  (*Id.* ¶ 26).  Also on July 6, 2021, Bacon met with Defendant Schloss regarding the latest PREA complaint.  (*Id.*).  On July 9, 2021, Bacon was released from the RHU and the allegations were dismissed as unsubstantiated.  (*Id.* ¶ 27).  During this investigation, Bacon spent eight days in the RHU.  (*Id.*).  Bacon alleges that the assault by inmate Keziah was preventable and the failure to do so constitutes deliberate indifference.  (*Id.* ¶ 28).

On August 26, 2021, Bacon spoke with Defendant Wilbur regarding the harassment he was experiencing.  (*Id.* ¶ 29).  Defendant Wilbur allegedly stated that the issues Bacon faced were the result of his own actions, and not because of his autism.  (*Id.*).  Bacon further alleges that Defendant Wilbur claimed that "Title 37 allows him to house any inmate wherever he wishes, and Mr. Bacon has no inherent right to be housed on a protected block."  (*Id.*).

The following Defendants are not mentioned in the body of the complaint: Christina Oprishka-Beyer, William Spare, Khalil Lewis, Samuel Hyder, Mark Rockavitch, C. David Pedri, Officer Hrivnak, Officer Sweet, and Officer Kane.  (*See generally* Doc. 1-1).

Defendants move to dismiss the complaint pursuant to Rule 12(b)(6).  (Doc. 3).  The motion is fully briefed and ripe for resolution.[1]

## II.  Legal Standard

A complaint must be dismissed under FED. R. CIV. P. 12(b)(6), if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).  The plaintiff must aver "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009).

"Though a complaint 'does not need detailed factual allegations,…a formulaic recitation of the elements of a cause of action will not do.'" *DelRio-Mocci v. Connolly Prop. Inc.*, 672 F.3d 241, 245 (3d Cir. 2012) (citing *Twombly*, 550 U.S. at 555).  In other words, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 118 (3d Cir. 2013) (internal citations and quotation marks omitted).  A court "take[s] as true all the factual allegations in the Complaint and the reasonable inferences that can be drawn from those facts, but . . . disregard[s] legal conclusions and threadbare recitals of the elements of a

---

[1]  Bacon's brief in opposition to Defendants' motion to dismiss contains facts that are not expressly set forth in the complaint.  (*See* Doc. 19).  The Court may not consider such allegations because a complaint cannot be amended by way of an opposition brief. *See Pennsylvania ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) ("[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.").

cause of action, supported by mere conclusory statements." *Ethypharm S.A. France v.*

*Abbott Laboratories*, 707 F.3d 223, 231, n.14 (3d Cir. 2013) (internal citations and quotation

marks omitted).

> *Twombly* and *Iqbal* require [a district court] to take the following three steps to
> determine the sufficiency of a complaint: First, the court must take note of the
> elements a plaintiff must plead to state a claim. Second, the court should
> identify allegations that, because they are no more than conclusions, are not
> entitled to the assumption of truth. Finally, where there are well-pleaded
> factual allegations, a court should assume their veracity and then determine
> whether they plausibly give rise to an entitlement for relief.

*Connelly v. Steel Valley Sch. Dist.*, 706 F.3d 209, 212 (3d Cir. 2013).

"[W]here the well-pleaded facts do not permit the court to infer more than the mere

possibility of misconduct, the complaint has alleged - but it has not show[n] - that the

pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (internal citations and quotation marks

omitted). This "plausibility" determination will be a "context-specific task that requires the

reviewing court to draw on its judicial experience and common sense." *Id.*

However, even "if a complaint is subject to Rule 12(b)(6) dismissal, a district court

must permit a curative amendment unless such an amendment would be inequitable or

futile." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008).

> [E]ven when plaintiff does not seek leave to amend his complaint after a
> defendant moves to dismiss it, unless the district court finds that amendment
> would be inequitable or futile, the court must inform the plaintiff that he or she
> has leave to amend the complaint within a set period of time.

*Id.*

7

## III.    Discussion

### A.    Disciplinary Confinement Claim

Bacon alleges that the conditions related to his placement in the RHU constituted

cruel and unusual punishment in violation of the Eighth Amendment, and that his placement

in the RHU violated his rights under the Due Process Clause of the Fourteenth Amendment.

### 1.    *Eighth Amendment Claim*

The Eighth Amendment's prohibition of cruel and unusual punishment imposes

duties on prison officials to provide prisoners with the basic necessities of life, such as food,

clothing, shelter, sanitation, medical care, and personal safety. *See Farmer v. Brennan*,

511 U.S. 825, 832 (1994); *Helling v. McKinney*, 509 U.S. 25, 31 (1993). To show that

conditions of confinement violate the Eighth Amendment, a plaintiff bears the burden of

proving two requirements: "(1) the deprivation alleged must be, objectively, 'sufficiently

serious,'" resulting in the "denial of 'the minimal civilized measure of life's necessities,'" and

"(2) the 'prison official must have a sufficiently culpable state of mind.'" *Thomas v. Tice*, 948

F.3d 133, 138 (3d Cir. 2020) (quoting *Farmer*, 511 U.S. at 834; *Wilson v. Seiter*, 501 U.S.

294, 299, 302-303 (1991) (cleaned up)); *McClure v. Haste*, 820 F. App'x 125, 128 (3d Cir.

2020). Only "extreme deprivations" are sufficient to present a claim for unconstitutional

conditions of confinement. *Fantone v. Herbik*, 528 F. App'x 123, 127 (3d Cir. 2013) (quoting

*Hudson v. McMillian*, 503 U.S. 1, 8-9 (1992)).

To satisfy the first requirement, Bacon "must show that he is incarcerated under conditions posing a substantial risk of serious harm," but he need not show actual injury. *Porter v. Pa. Dep't of Corr.*, 974 F.3d 431, 441 (3d Cir. 2020) (quoting *Mammana v. Fed. Bureau of Prisons*, 934 F.3d 368, 373 (3d Cir. 2019) (internal quotations omitted)). "The proof necessary to show that there was a substantial risk of harm is less demanding than the proof needed to show that there was a probable risk of harm." *Id.* (quoting *Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 227 (3d Cir. 2015)). "This is a totality-of-the circumstances analysis" and should consider the duration and severity of the unconstitutional conditions. *McClure*, 820 F. App'x at 128.

It is well-established that there is no constitutional right for an inmate to be celled in a particular place, or under particular circumstances. "[B]y virtue of their convictions, inmates must expect significant restrictions, inherent in prison life, on rights and privileges free citizens take for granted." *McKune v. Lile*, 536 U.S. 24, 39-40 (2002); *Podhorn v. Grondolsky*, 350 F. App'x 618, 620 (3d Cir. 2009) ("[P]risoners have no constitutional right to be assigned to a particular institution, facility or rehabilitative program."). Rather, "the prison has a penological interest in the housing placement of its inmates and '[i]t is well settled that the decision where to house inmates is at the core of prison administrators' expertise.'" *Thomaston v. Meyer*, 519 F. App'x 118, 119 (3d Cir. 2013) (quoting *McKune*, 536 U.S. at 39).

Here, the Court finds that Bacon failed to allege an excessive risk to his health or safety and failed to establish that any of the Defendants were subjectively aware of facts from which the inference could reasonably be drawn that his health or safety were at risk.

In the complaint, Bacon alleges that his Eighth Amendment rights were violated because of the conditions of confinement he encountered in the RHU at the Luzerne County Correctional Facility. (Doc. 1-1 ¶ 11). Bacon alleges that his placement in the RHU resulted in a loss of yard time, loss of television, loss of music, loss of playing games on his tablet, loss of reading, loss of access to drug and alcohol treatment therapy, loss of law library time, loss of religious services, loss of video visitation, reduced phone time, inability to maintain a prison job, and placement in a small cell. (*Id.*). Even taking the allegations together, the Court finds that Bacon has not established the objective element of his claim, i.e., that the allegations rise to the level of conduct that may be deemed inhumane or resulted in the deprivation of the minimal civilized measures of the necessities of life. Courts routinely hold that the conditions in restrictive housing in Pennsylvania prisons do not, in and of themselves, violate the Eighth Amendment. *See Griffin v. Vaughn*, 112 F.3d 703 (3d Cir. 1997) (holding that the restrictive conditions in administrative custody in the Pennsylvania state correctional institutions, alone, do not violate the Eighth Amendment). Turning to Bacon's allegations, the denial of exercise or recreation in some circumstances may result in a violation of the Eighth Amendment, *see Peterkin v. Jeffes*, 855 F.2d 1021, 1031-33 (3d Cir. 1988), but such is not the case here where the denial was temporary. *See*

*Fantone v. Herbik*, No. 11-cv-0484, 2013 WL 504610, at *13 (W.D. Pa. Jan. 17, 2013),

*report and recommendation adopted*, No. 11-cv-0484, 2013 WL 504693 (W.D. Pa. Feb. 8,

2013), *aff'd*, 528 F. App'x 123 (3d Cir. 2013).  Likewise, Bacon's allegations that he was

denied coping skills, leisure library and religious privileges, telephone privileges, video

visitation privileges, and placement in a small cell are insufficient to state a claim under the

Eighth Amendment.  The loss of such minor privileges simply does not rise to the level of a

sufficiently serious deprivation of life's necessities.  *See Griffin*, 112 F.3d 703, 709 (no

Eighth Amendment violation where plaintiff's confinement in administrative custody did not

"involve a deprivation of any basic human need"); *see also Williams v. Armstrong*, 566 F.

App'x 106, 109 (3d Cir. 2014) (*per curiam*) (inmate failed to state an Eighth Amendment

claims where "he [did] not allege that he was denied any of life's necessities, and the

duration of his time in the RHU was 112 days"); *Johnson v. Burris*, 339 F. App'x 129, 131

(3d Cir. 2009) (holding that administrative segregation and loss of minor privileges are

insufficient to state a conditions of confinement claim).

As to the second requirement, Bacon must show "that the prison official 'knows that

inmates face a substantial risk of serious harm and disregards that risk by failing to take

reasonable measures to abate it.'"  *Porter*, 974 F.3d at 444 (citations omitted).  The second

element is subjective, and the "prison official must both know of and disregard an excessive

risk to inmate health and safety."  *Mammana*, 934 F.3d at 373.  "In other words, 'the official

must both be aware of facts from which the inference could be drawn that a substantial risk

11

of serious harm exists, and he must also draw the inference.'" *Id.* (quoting *Farmer*, 511 U.S.

at 837). Bacon does not allege that any of the Defendants knew about the allegedly

inhumane conditions of the RHU, or if they did, when they were made aware of it and how

long thereafter the conditions were permitted to exist. Thus, Bacon has failed to support a

finding on the subjective prong of the Eighth Amendment regarding his conditions of

confinement claim.

In sum, whatever deficiencies may have existed, they do not rise to the level of a

constitutional violation. The Court will grant Defendants' motion to dismiss the Eighth

Amendment conditions of confinement claim.

## 2. *Fourteenth Amendment Claim*

### a. **Lack of Personal Involvement**

Defendants next seek dismissal of the due process claim based on a lack of

personal involvement. (Doc. 8, pp. 18-20). Individual liability will be imposed under § 1983

only if the state actor played an "affirmative part" in the alleged misconduct. *See Evancho*

*v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) (quoting *Rode v. Dellarciprete*, 845 F.2d 1195,

1207 (3d Cir. 1998)). Liability "cannot be predicated solely on the operation of respondeat

superior." *Id.* In other words, defendants in § 1983 civil rights actions "must have personal

involvement in the alleged wrongs . . . shown through allegations of personal direction or of

actual knowledge and acquiescence." *Atkinson v. Taylor*, 316 F.3d 257, 271 (3d Cir. 2003);

*Rode*, 845 F.2d at 1207-08. Acquiescence requires both contemporaneous knowledge of

the alleged wrongdoing and direct supervisory authority over the subordinate actor.

*Atkinson*, 316 F.3d at 271; *Rode*, 845 F.2d at 1207-08.  Such allegations, however, must be

made with appropriate particularity in that a complaint must allege the particulars of

conduct, time, place, and person responsible.  *Evancho*, 423 F.3d at 354; *Rode*, 845 F.2d at

1207-08.  When a plaintiff merely hypothesizes that an individual defendant may have had

knowledge of or personal involvement in the deprivation of his or her rights, individual

liability will not follow.  *Atkinson*, 316 F.3d at 271; *Rode*, 845 F.2d at 1207-08.

Bacon alleges that on March 31, 2021, Defendant Romiski ordered a correctional

officer to take Bacon to the RHU; on April 6, 2021, Defendant Schloss interviewed Bacon

while housed in the RHU; and, on May 14, 2021, Defendant Skipalis told Bacon that he was

being sent to the RHU.  (Doc. 1-1 ¶¶ 10, 14, 16).  Aside from these three references, Bacon

does not allege how any other named Defendants were involved in the violation of his due

process rights.  The complaint fails to allege any personal involvement of the Defendants

and fails to set forth any factual averments that identifies how they were involved in the

alleged wrongdoing.

To the extent that Bacon's claims against the Defendants assert liability based on a

theory of *respondeat superior* liability, as a matter of law, these assertions do not suffice to

state a claim.  With respect to any of the Defendants' roles as supervisors, "there are two

theories of supervisory liability, one under which supervisors can be liable if they

established and maintained a policy, practice or custom which directly caused the

13

constitutional harm, and another under which they can be liable if they participated in violating plaintiff's rights, directed others to violate them, or, as the persons in charge, had knowledge of and acquiesced in their subordinates' violations." *Santiago v. Warminster Twp.*, 629 F.3d 121, 129 n.5 (3d Cir. 2010) (quotation and alteration marks omitted). Completely absent from the complaint are allegations that any Defendant established and maintained a policy, practice or custom which directly caused the constitutional harm, or that he participated in violating Bacon's rights, directed others to violate them, or acquiesced in any unconstitutional conduct by his subordinates. For these reasons, the Court will grant Defendants' motion to dismiss the Fourteenth Amendment due process claim based on a lack of personal involvement. However, even assuming that Bacon established the personal involvement of Defendant Romiski—through her ordering a correctional officer to take Bacon to the RHU—the due process claim fails on the merits, as set forth below.

### b.    Due Process Claim

Bacon alleges that his Fourteenth Amendment due process rights were violated based on his placement in the RHU. The Fourteenth Amendment prohibits the states from depriving "any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV, § 1. Prisoners have no inherent constitutional right to any particular security classification or to any particular housing assignment. *See Wilkinson v. Austin*, 545 U.S. 209, 221-22 (2005) ("We have held that the Constitution itself does not give rise to a liberty

interest in avoiding transfer to more adverse conditions of confinement."). Rather, in the
prison context, "[d]ue process protection for a state created liberty interest is...limited to
those situations where deprivation of that interest 'imposes atypical and significant hardship
on the inmate in relation to the ordinary incidents of prison life.'" *Griffin*, 112 F.3d at 706
(quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)). "[C]onfinement in administrative or
punitive segregation will rarely be sufficient, without more, to establish the kind of 'atypical'
deprivation of prison life necessary to implicate a liberty interest." *Smith v. Mensinger*, 293
F.3d 641, 653 (3d Cir. 2002) (quoting *Sandin*, 515 U.S. at 486); *Burns v. Pa. Dep't of Corr.*,
642 F.3d 163, 171 (3d Cir. 2011) ("[I]nmates are generally not entitled to procedural due
process in prison disciplinary hearings because the sanctions resulting from those hearings
do not usually affect a protected liberty interest."). In deciding whether conditions are
atypical and significant for purposes of establishing a liberty interest, a court must consider
"(1) the duration of the challenged conditions; and (2) whether the conditions overall
imposed a significant hardship in relation to the ordinary incidents of prison life." *Williams v.
Sec'y Pa. Dep't of Corr.*, 848 F.3d 549, 560 (3d Cir. 2017). In determining whether a
hardship is atypical or significant, the relevant comparator is the general population. *Id.* at
564.

Bacon alleges that he was improperly held in disciplinary custody for a total of forty-
six days, on three separate occasions—first for twenty-four days, then for fourteen days,
and finally for eight days. (Doc. 1-1 ¶¶ 15, 19, 27). The complaint does not give rise to a

due process claim based on Bacon's placement in disciplinary custody. With regard to the limited duration of time Bacon spent in disciplinary custody, he fails to state a constitutional claim on the facts alleged. *See Fantone*, 528 F. App'x at 128-29 (finding no procedural due process claim when inmate complained of thirty-five days in isolation, and the court stating, "[w]e have held that this type of confinement does not constitute an 'atypical and significant hardship' so as to trigger due process rights.") (citation omitted); *Young v. Beard*, 227 F. App'x 138, 141 (3d Cir. 2007) (finding inmate sentenced to an aggregate of 930 days in disciplinary confinement without dayroom or telephone privileges did not constitute an atypical and significant hardship sufficient to trigger a liberty interest under *Sandin*); *Griffin*, 112 F.3d at 706 (finding that fifteen months in segregation was not an atypical and significant hardship); *Smith*, 293 F.3d at 654 (stating that seven months' disciplinary confinement "does not, on its own, violate a protected liberty interest as defined in [*Sandin*]."). The Court will grant Defendants' motion to dismiss the due process claim based on Bacon's placement in disciplinary custody.

B.    **Eighth Amendment Failure to Protect Claim**

Bacon also alleges that he was assaulted by two inmates, in two separate instances. It is well-settled that "'[b]eing violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society.' As such, the Eighth Amendment's Cruel and Unusual Punishments Clause imposes on prison officials 'a duty to protect prisoners from violence at the hands of other prisoners.'" *Bistrian v. Levi*, 696 F.3d

352, 366-67 (3d Cir. 2012) (quoting *Farmer v. Brennan*, 511 U.S. 825, 833, 834 (1994); and

citing *Beers-Capitol v. Whetzel*, 256 F.3d 120, 130-33 (3d Cir. 2001); *Hamilton v. Leavy*,

117 F.3d 742, 746 (3d Cir. 1997)).

      In order for a plaintiff to prove a constitutional violation in a failure-to-protect case,

the plaintiff must produce sufficient evidence showing that: (1) he was incarcerated under

conditions posing a substantial risk of serious harm; (2) each defendant was deliberately

indifferent to that risk; and (3) the defendant's deliberate indifference caused him harm.

*Travillion v. Wetzel*, 765 F. App'x 785, 790 (3d Cir. 2019) (citing *Bistrian*, 696 F.3d at 367,

*Hamilton*, 117 F.3d at 746).  Deliberate indifference requires that the prison official "knows

of and disregards an excessive risk to inmate health or safety; the official must both be

aware of facts from which the inference could be drawn that a substantial risk of serious

harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.

      Consequently, prison officials can avoid liability by showing they were unaware of

the danger, or they believed the risk was insubstantial or nonexistent. *Bistrian*, 696 F.3d at

367.  "In addition, prison officials who actually knew of a substantial risk to inmate health or

safety may be found free from liability if they responded reasonably to the risk, even if the

harm ultimately was not averted." *Id.* (quoting *Farmer*, 511 U.S. at 844) (internal quotation

marks omitted)).  Mere negligent conduct that leads to serious injury of a prisoner by a

prisoner does not expose a prison official to civil rights liability. *Davidson v. Cannon*, 474

U.S. 344, 347-48 (1986).

Moreover, liability may not be imposed under § 1983 on the traditional standards of *respondeat superior*. *Capone v. Marinelli*, 868 F.2d 102, 106 (3d Cir. 1989) (citing *Hampton v. Holmesburg Prison Officials*, 546 F.2d 1017, 1082 (3d Cir. 1976)). In *Capone*, the court noted "that supervisory personnel are only liable for the § 1983 violations of their subordinates if they knew of, participated in or acquiesced in such conduct." 868 F.2d at 106 n.7. The plaintiff must allege that the defendant was personally involved in the events or occurrences that underlie the claim. *See Atkinson*, 316 F.3d at 270-71; *Rode*, 845 F.2d at 1207 ("[a] defendant in a civil rights action must have personal involvement in the alleged wrongs. . . . [P]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity.").

Here, Bacon alleges that prison officials failed to protect him from inmate Pennington and inmate Keziah, who allegedly assaulted him on two separate occasions. With respect to inmate Pennington, Bacon asserts that "[t]he officers in charge knew that he was violent and unpredictable…and knew that plaintiff was uncomfortable and did not feel safe being housed with Pennington." (Doc. 1-1 ¶ 13). With respect to inmate Keziah, Bacon alleges Keziah assaulted him after Bacon yelled at him. (*Id.* ¶ 21). Bacon contends that staff knew that Keziah previously threatened him. (*Id.*). He appears to assert that prison officials should have known that he would have been assaulted based on the inmates' history of aggression. However, Bacon's attempt to demonstrate a substantial risk of harm based on

nothing more than the inmates' general propensity towards violence represents the type of

speculation that the Third Circuit and other courts have routinely deemed inadequate to

support an Eighth Amendment claim.  Thus, even if Defendants were aware that inmates

Pennington and Keziah had a history of violence, the Third Circuit has held that the risk that

"an inmate with a history of violence might attack another inmate for an unknown reason" is

too speculative to maintain a failure to protect claim against prison officials.  *Bistrian v. Levi*,

696 F.3d 352, 371 (3d Cir. 2012), *abrogated on other grounds by Mack v. Yost*, 968 F.3d

311 (3d Cir. 2020); *see also Zuniga v. Chamberlain*, 821 F. App'x 152, 157 n.8 (3d Cir.

2020) (affirming grant of summary judgment to prison officials even where the inmate had

reported a prior attack to an unnamed guard); *Buoniconti v. City of Philadelphia*, 148

F.Supp.3d 425 (E.D. Pa. 2015) (allegation that attackers had a history of "known prior

violent acts and propensity for violence" was insufficient to establish deliberate indifference).

In the instant case, Bacon does not allege that the assaults by inmates Pennington and

Keziah were the product of "longstanding, pervasive, well-documented, or previously noted

tensions between" Bacon and inmates Pennington and Keziah.  *Blackstone v. Thompson*,

568 F. App'x 82, 84 (3d Cir. 2014).

Moreover, Bacon's allegations are insufficiently particularized as he failed to plead

any of the Defendants' personal involvement in failing to protect Bacon from the assaults.

As stated, "[a][n individual government] defendant in a civil rights action must have personal

involvement in the alleged wrongdoing…Personal involvement can be shown through

allegations of personal direction or of actual knowledge and acquiescence." *Evancho*, 423

F.3d at 353 (quoting *Rode*, 845 F.2d at 1207).  "A civil rights complaint is adequate where it

states the conduct, time, place, and persons responsible."  *Id.*  Under 42 U.S.C. § 1983,

individual liability is only warranted where an individual personally directed or knowingly

acquiesced to the alleged misconduct.  *Id.*

Bacon makes no allegations that any named Defendant was allegedly deliberately

indifferent to his safety.  Without specific allegations that the Defendants personally

contributed to Bacon's alleged harm, there is no basis for Bacon to proceed against them on

a failure to protect claim.  The Court will grant Defendants' motion to dismiss the Eighth

Amendment failure to protect claim with leave to amend.

### C.     Municipal Liability Claim

Defendants also seek to dismiss the purported municipal liability claim.  (Doc. 8, pp.

32-34).  A municipality may be held liable under § 1983 "if the governmental body itself

'subjects' a person to a deprivation of constitutional rights or 'causes' a person 'to be

subjected' to such deprivation."  *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (quoting

*Monell v. Dep't of Social Servs. of N.Y.*, 436 U.S. 658, 692 (2018)).  Thus, a plaintiff seeking

to impose constitutional liability on a municipality must meet the difficult burden of proving

that an "action pursuant to official municipal policy" caused their injury.  *Monell*, 436 U.S. at

691, 694.  This requires the plaintiff to identify an official or unofficial municipal policy—

including "decisions of a government's lawmakers, the acts of its policymaking officials, and

practices so persistent and widespread as to practically have the force of law," *Connick*, 563 U.S. at 61 (citations omitted), and demonstrate that said policy was the "moving force" behind his injury, *Berg v. Cnty. of Allegheny*, 219 F.3d 261, 275-76 (3d Cir. 2000) (quoting *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997)).

The complaint fails to identify any policy maker effectuating an official policy which was the moving force behind the alleged constitutional violation. (*See* Doc. 1-1). In fact, the complaint fails to reference *any* policy or procedure that was allegedly violated. Consequently, Bacon's claim in the form of a violation of a municipal policy under *Monell* will be dismissed with leave to amend.

### D.     Claims for Declaratory and Injunctive Relief

The case or controversy requirement of Article III, § 2 of the United States Constitution subsists through all stages of federal judicial proceedings. Parties must continue to have a "personal stake in the outcome of the lawsuit." *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477-78 (1990); *Preiser v. Newkirk*, 422 U.S. 395, 401 (1975). The mootness doctrine recognizes that "[i]f developments occur during the course of adjudication that eliminate a plaintiff's personal stake in the outcome of a suit or prevent a court from being able to grant the requested relief, the case must be dismissed as moot." *Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 698-99 (3d Cir. 1996). An inmate's transfer from the facility complained of generally moots the equitable and declaratory claims. *Abdul-Akbar v. Watson*, 4 F.3d 195, 206-07 (3d Cir. 1993); *see Griffin v. Beard*, 401

F. App'x 715 (3d Cir. 2010) (transfer from SCI-Huntingdon renders inmate injunctive relief claim moot).

Bacon is no longer housed at the Luzerne County Correctional Facility.  In light of Bacon's transfer from Luzerne County Correctional Facility, the institution wherein the allegations related to his claims stem, his requests for injunctive and declaratory relief are now moot.

## IV.   **Leave to Amend**

When a complaint fails to present a prima facie case of liability, district courts must generally grant leave to amend before dismissing the complaint.  *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002); *Shane v. Fauver*, 213 F.3d 113, 116-17 (3d Cir. 2000).  Specifically, the Third Circuit Court of Appeals has admonished that when a complaint is subject to dismissal for failure to state a claim, courts should liberally grant leave to amend "unless such an amendment would be inequitable or futile."  *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008) (citing *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004)).  The defects in Bacon's pleading are substantial.  The Eighth Amendment and Fourteenth Amendment disciplinary confinement claims are both factually and legally flawed, and thus incurable; therefore, curative amendment would be futile.  However, the allegations relating to the Eighth Amendment failure to protect claim and municipal liability claim are largely factual in nature and thus conceivably could be cured by an amended

pleading.  The Court will dismiss Bacon's complaint with leave to amend only with respect to these latter two claims.

## V.    **Conclusion**

Based on the foregoing, the Court will grant Defendants' motion (Doc. 3) to dismiss and afford Bacon the opportunity to file an amended complaint only with respect to his Eighth Amendment failure to protect claim and municipal liability claim.  A separate Order shall issue.

Robert D. Mariani
United States District Judge

Dated: April 26, 2024