IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOSHUA DWANE BACON | Removed from the Court of Common Pleas |
| Plaintiff, *pro se*, | of Luzerne County Civil No. 2023-03307 |
| v. | [JUDGE MARIANI] |
| LUZERNE COUNTY, et al. | NO. 3:23-CV-01699-RDM-CA |
| Defendants, | Filed via U.S. Mail on August 1, 2024 |

**PLAINTIFF'S RESPONSES TO DEFENDANTS' INTERROGATORY REQUESTS**

1) My full name is Joshua Dwane Bacon, I am single and have remained single, my current address (incarcerated) is 500 East 4th St, Chester, PA 19013. At the time of the incident, my address (incarcerated) was 99 Water St, Wilkes-Barre, PA 18702. Date of Birth 6/24/2000, Geisinger Wyoming Valley in Wilkes-Barre, PA. No children at this time. No involvement in the US Armed Forces. I am not providing my full Social Security Number as I believe I am not supposed to under court rules; last four are 4374. If necessary, I will provide the full social upon court request.

2) Plaintiff has identified at least three possible inmate witnesses.
    a. Dana Ganjeh (SCI-Greene QN8636) (Status: Requested Permission to Obtain Affidavit)
    b. Jose Contes (Location unknown)
    c. Erik Watkins (Location unknown)
    d. Jose Ruiz (Location: SCI-Chester) (Currently working on obtaining a notarized affidavit which will be served upon defendants once complete)

3) Plaintiff suffers from some facial memory issues (anosymia) related to Autism, so Plaintiff will provide as many details as possible, but in some cases these details are limited. Additionally, Autism causes individuals to be bad judges of age, height, and weight when remembering someone, so these details should be taken with a grain of salt.
    a. David Witkosky is a tall white male, above average height (5'10"+), in his 50s or early 60s, usually wears a hat indoors so I cannot remember his hair, may have had a clean shaven face, but I cannot remember much else.

b. Officer Skipalis is an officer I saw very infrequently. I believe he was a tall, skinny white male, in his late 20s or 30s? He may have had dark hair, may have had a clean shaven face, but I cannot remember much else.

c. William Spare is a tall white male, in his late 20s or 30s. I believe he may have been slightly heavier but not necessarily overweight. I cannot remember much else. He may have had a goatee, he often wore a hat indoors so I am unsure about hair.

d. William Hall is an older white male, in his late 50s or 60s. Slightly overweight (has a "beer gut"), about six feet tall. He usually had a greying goatee and wore a hat, but had some hair (cannot remember color). He may have had tattoos, but I cannot remember any. Hall sometimes wore glasses but not always. Always worked in RHU.

e. Khalil Lewis is a young black male, maybe in his late 20s or 30s. He was unfortunately nicknamed "Token" by the other staff members, referring to the South Park character, as he was the only black LCCF officer and was hired immediately after George Floyd was killed. Khalil was slightly shorter than me (under 6 feet), in good shape (muscular, but not a bodybuilder). No tattoos that I noticed. Dark colored hair often worn in a tight fade.

f. Paul Richards is an older white male, tall and skinny, in his 60s, usually soft spoken. Approximately six feet, no tattoos, often wore glasses, some hair but cannot remember the color, often alternated facial hair – sometimes he had a short goatee or beard, other times he was clean shaven. Always worked in RHU.

g. David Steever is a middle age white male, in his early 50s maybe. My description is fuzzy because he was not seen on the block often. He is shorter than me, maybe 5'10"? Dark colored hair I think. No facial hair to my belief. Unsure about glasses. Often wore a hat indoors. No visible tattoos to my belief.

h. Randal Williams is an older white male, tall and skinny, in his late 50s or 60s. Approximately six feet, no tattoos, often wore glasses, some hair but often wore a hat, alternated between a goatee and clean shaven face.

i. James Wilbur is an officer I met only one time in August 2021, as he is a captain at the facility. He is a middle age white male, maybe in his 40s is my best guess.

He did not have facial hair, had a full head of hair, but I do not remember the hair (I think it was a dark color), did not wear glasses that day, was about average height I think (5'10"?).

j. Samuel Hyder is an individually I only personally met once, at the same meeting as James Wilbur, as he was the Deputy Warden. He is an older white male, maybe in his 60s, significantly shorter than I am (maybe 5'9"?), thinning or balding hair, no facial hair, overweight, no tattoos.

k. Mark Rockovich is an individual I have never met. I have no idea what he looks like. However, this is unnecessary as his actions were indirect, as he controls the operations of the entire facility.

l. Hearing Examiner Seam Mulhorn is an individual I met only two or three times, but always briefly and in a moment of high stress, so my memories of him are limited. He is a white male, middle aged, average height I think. No tattoos that I can remember. He may have had glasses, cannot remember. Unfortunately this is the extent to which I can describe him.

m. Officer Hrivnak is a middle aged white male, maybe in his 50s, had a short beard that was mostly grey, about 5'10" I think. I remember Hrivnak as being a bigger guy, not necessarily fat, but a relatively strong guy as well. Hrivnak always wore a hat and often wore glasses.

n. Officer Sweet is an officer that I saw infrequently, and I have limited memory of his appearance. If I remember correctly, he was a young white male, maybe in his late 20s or early 30s. He had dark colored hair and I don't remember any facial hair or glasses. He likely wore a hat indoors often.

o. Patrick Kane is an officer I do not remember. While it is likely that he was an officer involved in one of these incidents, I must admit I do not remember and cannot describe him.

p. Kaitlynn Romiski is a middle aged white woman, likely in her late 40s. I couldn't make a strong guess as to her height – she is obviously shorter than me, but whether that is 5'4" or 5'6" or whatever is something I cannot recall. At the time I met her, I believe she had long brown hair, was about average weight for her size, did not wear glasses, no visible tattoos.

   q. Deborah Schloss is a middle aged white woman, likely in her 40s. Again, I cannot make an accurate guess to her height or weight. I believe she had dark colored hair, did not wear glasses, no tattoos.
   r. Jamie Aquilla is a young white male, in his late 20s or 30s. I believe he was shorter than me, maybe 5'9"? He has short blonde hair and no facial hair. I never saw him wear glasses. The defining characteristic he had was that he had a very flamboyant vibe about himself, so to speak. Obviously I don't know or care about his sexual orientation, but he is someone who might be easily stereotyped as a gay man.
   s. Christina Oprishko-Beyer is the grievance coordinator. While I may have met her in passing once or twice, I do not recall specifically meeting her, and cannot describe her.
4) This question is incredibly vague and open ended. Essentially, Defendants are asking for every conversation that Mr. Bacon had with 20+ Defendants over the course of over two years. Plaintiff requests a series of more specific, detailed, targeted questions to answer.
5) This question was directly answered in the Original Complaint and First Amended Complaint. If there are specific questions about whether an individual defendant took or did not take a specific action which deprived the plaintiff of his Right(s), please submit these more specific, detailed, targeted questions to answer.
6) This is a difficult question to answer. While physical injuries were sustained, Plaintiff was incarcerated and thus all healthcare costs were incurred by the jail's healthcare provider. However, it is difficult to place a value on the pain and suffering of these physical injuries, or on the extreme mental anguish caused by the actions of the Defendants. When considering the value of this kind of injury, it's important to look not only at one or two isolated incidents, such as an assault or an RHU placement, but at the totality of the conditions of confinement during this two year period, and the disproportionate impact this had on the Plaintiff. Bacon lived in constant, never-ending, continuous fear of what might happen to him next. He lived in constant fear that others on the block might assault him, or that his own cellmate might assault him. He lived in this fear, knowing that if someone decided to assault him, not only would the officer not come to save him, but they would also likely drag him off to the RHU as well, just for

being a victim of assault. He lived in fear that someone else's actions would uproot his entire existence, causing him further trauma as he sat in isolation. He learned that the officers entrusted to protect him were more interested in making jokes about him getting beat up, or worse yet, encouraging others to do the same.

7) This is a difficult question to answer, because the scope of this question is inaccurate. These events took place inside a county jail during COVID-19. While some "precluded activities" can be quantified, such as lost video visits while in the RHU, others are more difficult to quantify. Mr. Bacon states that he often refused yard, block out, showers, phone calls, and video visits because he was afraid of being attacked by KEZIAH or another inmate while he was out of his cell. Bacon states that at one point he was so afraid of socializing with others that he intentionally isolated himself from others, requested single cell status out of fear from assault from future cellmates, and requested and was granted permission to go to the yard and school alone, use the shower and phone while all other inmates were locked in their cells, etc. This type of isolation is abnormal and extreme, and was only necessary because of the incredible trauma inflicted upon Bacon. Even once he was transferred to state prison, Bacon's fears, created by the trauma inflicted upon him, remained, and he voluntarily segregated himself to his cell for over a year after leaving Luzerne County. Even when the threat of assault was no longer actually present, even when he informed staff at Camp Hill and a separation was placed between him and Mr. Keziah and Mr. Pennington, even when he was placed on specialized mental health units at Smithfield, Camp Hill, and Albion, he still isolated himself out of fear of assault, knowing that the risk of an unwarranted assault was very low, because in his mind, this was still a very real threat. Years later, he still avoids areas out of reach of cameras or out of sight of officers, generally distrusts correctional officers charged with guaranteeing his safety, and avoids areas where many people congregate, such as the prison yard or the gym. Additionally, Bacon still fears being celled with others, and lives in a state of constant anxiety that his current cellmate could attack him, simply because of the events that occurred at LCCF.

8) This information will be provided to the Defendants, but more time is requested. As stated previously via mail, HIPAA releases will be restricted to mental health and

behavioral health records only for community records, to preserve Bacon's privacy. Records from Luzerne County Correctional Facility will be extensive and all-inclusive.

9) No, I have never been involved in any other lawsuits.

10) Please see my answer to #4. This question is far too vague for me to answer. Plaintiff requests a series of more specific, detailed, targeted questions to answer.

11) Please see my answer to #4. This question is far too vague for me to answer. Plaintiff requests a series of more specific, detailed, targeted questions to answer.

12) Please see my answer to #4. This question is far too vague for me to answer. Plaintiff requests a series of more specific, detailed, targeted questions to answer.

13) Aside from institutional grievances filed within LCCF, which often went unanswered or ignored, no other complaints were filed. PLRA and other relevant laws/statutes do not require the exhaustion of any other remedies aside from internal administrative remedies.

14) **Objection.** I see no reason why this is relevant to the scope of this lawsuit. My employment history is not on trial. However, I will state that for a short time I was employed as a block worker within Administrative Segregation at LCCF, from about April 2020 to November 2020. I was fired because Defendant David Steever discriminated against me due to my Autism diagnosis. I am not including these claims as part of this lawsuit, but this is the only employment record that is relevant, as it is the only employment I have had while incarcerated at LCCF.

15) I have only been arrested one time, on January 24, 2020. I do not currently know the names of the arresting officers, but this could conceivably be obtained. The department was the Shickshinny barracks of the Pennsylvania State Police. The victim was George Bacon, and no complainant is identified, as charges were brought by the Commonwealth. I was found Guilty but Mentally Ill and sentenced to 120-240 months incarceration on one count of murder in the third degree. I have never been on parole or probation.

IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOSHUA DWANE BACON | \| | Removed from the Court of Common Pleas |
| Plaintiff, *pro se,* | \| | of Luzerne County Civil No. 2023-03307 |
| v. | \| | [JUDGE MARIANI] |
| LUZERNE COUNTY, et al., | \| | NO. 3:23-CV-01699-RDM-CA |
| Defendants, | \| | Filed via US Postal Service on August 1, 2024 |

### CERTIFICATE OF SERVICE

I, JOSHUA DWANE BACON, hereby certify that on Thursday, August 1, 2024, I served the foregoing *PLAINTIFF'S RESPONSES TO DEFENDANTS' INTERROGATORY REQUESTS* upon the persons indicated below via United States Mail:

United States District Court for the Middle District of Pennsylvania

Scranton, Pennsylvania

Sean P. McDonough, Esq.

Dougherty, Levanthal, & Price, LLP

75 Glenmaura National Boulevard

Moosic, PA 18507

Respectfully Submitted,

Joshua Bacon

SCI-Chester QN6521

500 East 4th Street

Chester, PA 19013



Smart Communications/PADOC
SCI- CHS
Name Bacon
Number QN6521
PO Box 33028
St Petersburg FL 33733

US POSTAGE — PITNEY BOWES
ZIP 19013 $ 000.69⁰
02 4W
0000359303 AUG 02 2024
PHILADELPHIA PA 19013
3 AUG 2024 PM 8 L

United States District Court,
Middle District of PA
235 N Washington Ave #1148
Scranton, PA 18501

RECEIVED
SCRANTON
AUG 06 2024
PER _____
DEPUTY CLERK

18501-500199