# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JOSHUA DWANE BACON,          :     Civil No. 3:23-cv-1699

         Plaintiff        :     (Judge Mariani)

     v.           :

LUZERNE COUNTY, *et al.*,      :

     Defendants      :

**FILED**
**SCRANTON**

JUN 3 0 2025

PER _____
DEPUTY CLERK

## MEMORANDUM

Plaintiff Joshua Bacon ("Bacon"), an inmate in the custody of the Pennsylvania Department of Corrections ("DOC"), commenced this civil rights action in the Court of Common Pleas of Luzerne County.  (Doc. 1-1).  Defendants subsequently removed the action to the United States District Court for the Middle District of Pennsylvania.  (Doc. 1).

The matter is proceeding via a second amended complaint[1] (Doc. 78) against Luzerne County, the Luzerne County Correctional Facility ("LCCF"), Correctional Officer Kaitlynn Romiski, Treatment Coordinator and Grievance Coordinator Christina Oprishko-Beyer, Correctional Officer David Witkowsky, Correctional Officer David Steever, Correctional Officer William Hall, Correctional Officer Paul Richards, Correctional Officer Randal Williams, Correctional Officer James Wilbur, Deputy Warden Samuel Hyder,

---

[1]  As a matter of law, an amended complaint takes the place of any prior complaint, effectively invalidating the prior complaint.  *See Palakovic v. Wetzel*, 854 F.3d 209, 220 (3d Cir. 2017) ("in general, an amended pleading...supersedes the earlier pleading and renders the original pleading a nullity").  As stated in the Court's October 30, 2024 Order, the second amended complaint is the governing pleading in this action.  (Doc. 76).

Warden Mark Rockovich, Correctional Officer Patrick Kane, Correctional Officer Hrivnak, Correctional Officer Sweet, Correctional Office Skipalis, Hearing Examiner Sean Mulhorn, Classifications Specialist Jamie Aquilla, former Luzerne County Manager C. David Pedri, Luzerne County Manager Romilda Crocamo, and Prison Rape Elimination Act ("PREA") Coordinator Deborah Schloss.

Presently pending before the Court is Defendants' motion (Doc. 82) to partially dismiss the second amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, the motion will be granted in part and denied in part.

I.    **Allegations of the Second Amended Complaint**

At all relevant times, Bacon was housed as a pretrial detainee at the Luzerne County Correctional Facility. (Doc. 78, at 2). Bacon states that he was diagnosed with autism spectrum disorder and attention deficit hyperactive disorder. (*Id.* at 5).

Bacon first alleges that Defendants failed to protect him from assaults by other inmates. (*Id.* at 8-10). Bacon asserts that he was assaulted on two separate occasions at LCCF. (*Id.* at 8). On April 6, 2021, Bacon alleges that inmate Kyle Pennington assaulted him. (*Id.*). He alleges that Defendants Hall, Richards, Williams, Witkosky, and Steever had personal experiences with Pennington and knew of the risk to Bacon by placing him in a cell with Pennington. (*Id.* at 8-10). Bacon asserts that Defendants Hall and Richards conspired

to put him in a cell with Pennington which caused Bacon to "be incarcerated under conditions posing a substantial risk of harm." (*Id.* at p. 9).

On July 2, 2021, Bacon alleges that he was assaulted by inmate Joshua Keziah. (*Id.* at 8). Bacon alleges that he informed Defendants Witkosky, Steever, Skipalis, and Williams that Keziah threatened him and that he requested a separation from Keziah. (*Id.* at 9-10). Bacon alleges that his separation request was ignored. (*Id.*).

Bacon next sets forth a municipal liability claim against Luzerne County. (*Id.* at 11-12). He alleges that Luzerne County has "several unofficial 'customs' and 'practices' that caused his injuries." (*Id.* at 11). Bacon avers that his procedural due process rights were violated because Luzerne County has a policy to place inmates accused of PREA violations in the Restricted Housing Unit ("RHU") while the investigation is pending. (*Id.* at 11). Bacon alleges that his due process rights were violated by Luzerne County in the following ways: (1) LCCF was reckless and negligent in failing to have "a process to identify those inmates and pre-trial detainees who might disproportionately suffer or decompensate in solitary confinement" (*id.*); (2) LCCF uses the Administrative Segregation block to house "both individuals who are in fear for their lives as well as individuals who are a threat to the security of the institution" (*id.*); (3) LCCF does not have separate housing for individuals with mental health issues needing additional care and support (*id.* at 12); and (4) LCCF does not have a policy requiring a specialized mental health unit for individuals with severe mental illness (*id.*; *see also* Doc. 107, at 7).

Bacon next alleges that his placement in the RHU, while suffering a mental impairment, violated his procedural due process rights and constituted an unconstitutional condition of confinement. (Doc. 78, at 12-17). Bacon was placed in the RHU on three separate occasions. (*Id.*). First, on March 31, 2021, Bacon was accused of PREA violations. (*Id.* at 14). Defendants Romiski, Aquilla, and Schloss allegedly ordered Bacon to be placed in the RHU on March 31, 2021. (*Id.*). He alleges that Defendants Romiski, Aquilla, and Schloss did not provide an explanation for his transfer to the RHU and did not provide him an opportunity to respond to the accusations. (*Id.*). On April 23, 2021, Bacon was released from the RHU after the charges were determined to be unsubstantiated. (*Id.*).

Second, on May 14, 2021, Defendants Aquilla and Schloss ordered Bacon to be placed in the RHU, again due to allegations of PREA violations. (*Id.* at 13-15). He alleges that Defendants Romiski, Kane, Aquilla, Skipalis, Oprishko-Beyer, and Schloss did not provide an explanation for his transfer to the RHU and did not provide him an opportunity to respond until May 27, 2021. (*Id.*). Defendant Aquilla did inform Bacon that he "was under investigation again" but did not explain the nature of the investigation. (*Id.* at 13). Bacon remained in the RHU until May 28, 2021. (*Id.*).

Third, on July 2, 2021, Bacon alleges that he was assaulted by inmate Keziah. (*Id.* at 13-15). Also on July 2, 2021, Defendants Witkosky and Steever ordered Bacon to be placed in the RHU under alleged misconduct and PREA violations, despite their purported acknowledgment that "Bacon did not throw any punches" during altercation with inmate

4

Keziah. (*Id.*).  Bacon "does not dispute that written notice of the charges was presented

more than 24 hours prior, nor does he dispute that an explanation was provided." (*Id.* at

14).  He further asserts that "[a] written statement of the reasons for disciplinary action taken

was not necessary," because he was found not guilty. (*Id.*).  Bacon alleges that he was not

provided a hearing on these charges "within a reasonable amount of time." (*Id.*).  He

asserts that Defendant Hearing Examiner Mulhorn met with him on July 5, 2021 regarding

the misconduct for fighting, but Mulhorn did not issue a decision until July 13, 2021. (*Id.*).

Bacon further alleges that he was not provided official notice of the PREA violation until July

6, 2021. (*Id.*).  Bacon was released from the RHU on July 9, 2021. (*Id.*).  With respect to

this third placement in the RHU, Bacon alleges that Defendants Williams, Witkosky,

Steever, Sweet, Hrivnak, Wilbur, Kane, Schloss, Mulhorn, and Oprishko-Beyer violated his

procedural due process rights. (*Id.* at 14).

Bacon asserts that his placements in the RHU amounted to solitary confinement and

violated his "substantial liberty interest" because of his "serious mental illness." (*Id.* at 14-

15).

During these three periods of time in the RHU, Bacon spent a total of 46 days in

solitary confinement. (*Id.* at 15).  Bacon alleges as follows:

> While Bacon acknowledges that the placements in solitary confinement may
> appear relatively brief on the surface, the amount of time placed in solitary
> confinement is irrelevant, because even one day of solitary confinement
> under these conditions inherently violated Bacon's Fourteenth Amendment
> rights in light of his [severe mental illness].

(*Id.* at 15-16, ¶ 19).  He alleges that the "above named" Defendants acted "recklessly, negligently, and with deliberate indifference to his qualified [severe mental illness]" by placing him in solitary confinement despite allegedly being aware of his mental health diagnoses.  (*Id.* at 15).

Bacon alleges that when he was housed in the RHU, he was confined in a small cell without a window, he was not allowed in-person or video visits, he was allowed limited phone calls and limited recreation time, and he was not allowed to use a television, radio, tablet, personal books, or magazines.  (*Id.* at 16).

Defendants now move to partially dismiss the second amended complaint pursuant to Rule 12(b)(6).  (Doc. 82).  The motion is fully briefed and ripe for resolution.

## II.   <u>Legal Standard</u>

A complaint must be dismissed under Federal Rule of Civil Procedure 12(b)(6), if it does not allege "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).  The plaintiff must aver "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009).

"Though a complaint 'does not need detailed factual allegations,…a formulaic recitation of the elements of a cause of action will not do.'"  *DelRio-Mocci v. Connolly Prop. Inc.*, 672 F.3d 241, 245 (3d Cir. 2012) (citing *Twombly*, 550 U.S. at 555).  In other words,

"[f]actual allegations must be enough to raise a right to relief above the speculative level."
*Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 118 (3d Cir. 2013)
(internal citations and quotation marks omitted).  A court "take[s] as true all the factual
allegations in the Complaint and the reasonable inferences that can be drawn from those
facts, but . . . disregard[s] legal conclusions and threadbare recitals of the elements of a
cause of action, supported by mere conclusory statements."  *Ethypharm S.A. France v.
Abbott Laboratories*, 707 F.3d 223, 231, n.14 (3d Cir. 2013) (internal citations and quotation
marks omitted).

> *Twombly* and *Iqbal* require [a district court] to take the following three steps to
> determine the sufficiency of a complaint:  First, the court must take note of the
> elements a plaintiff must plead to state a claim.  Second, the court should
> identify allegations that, because they are no more than conclusions, are not
> entitled to the assumption of truth.  Finally, where there are well-pleaded
> factual allegations, a court should assume their veracity and then determine
> whether they plausibly give rise to an entitlement for relief.

*Connelly v. Steel Valley Sch. Dist.*, 706 F.3d 209, 212 (3d Cir. 2013).

"[W]here the well-pleaded facts do not permit the court to infer more than the mere
possibility of misconduct, the complaint has alleged - but it has not show[n] - that the
pleader is entitled to relief."  *Iqbal*, 556 U.S. at 679 (internal citations and quotation marks
omitted).  This "plausibility" determination will be a "context-specific task that requires the
reviewing court to draw on its judicial experience and common sense."  *Id.*

However, even "if a complaint is subject to Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008).

> [E]ven when plaintiff does not seek leave to amend his complaint after a defendant moves to dismiss it, unless the district court finds that amendment would be inequitable or futile, the court must inform the plaintiff that he or she has leave to amend the complaint within a set period of time.

*Id.*

## III.    Discussion

### A.    Luzerne County Correctional Facility

With respect to Bacon's purported constitutional claims against the Luzerne County Correctional Facility as an institution, it is well-settled that inmate civil rights actions under § 1983 may be brought against:

> Every *person* who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws [of the United States].

42 U.S.C. § 1983 (emphasis added).  Thus, by its terms § 1983 limits the scope of liability to specific persons or entities who violate constitutional rights, and it has been held that a prison or correctional facility is not a "person" within the meaning of § 1983.  *Fischer v.*

*Cahill*, 474 F.2d 991, 992 (3d Cir. 1973). The Luzerne County Correctional Facility is not a proper Defendant in this case and will be dismissed.[2]

    B.    <u>*Monell* Liability</u>

Defendants first seek to dismiss the *Monell*[3] claim against Luzerne County. (Doc. 90, at 24-37).

Municipalities and other local governmental entities or officials may not be held liable under federal civil rights laws for the acts of their employees under a theory of respondeat superior or vicarious liability. *Ashcroft*, 556 U.S. 662; *see also Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1027 (3d Cir. 1991). However, they may be held liable "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). To sustain a *Monell* municipal liability claim, a plaintiff must "identify a municipal 'policy' or 'custom' that caused the plaintiff's injury" to prevail. *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 403 (1997). This custom must be "so widespread as to have the force of law." *Brown*, 520 U.S. at 404; *see also Beck v. City of*

---

[2]    Defendants' motion does not address the claims against the Luzerne County Correctional Facility. Nonetheless, because the Court finds that the Luzerne County Correctional Facility is not a properly named Defendant and is not amenable to suit under § 1983, it will be dismissed *sua sponte*. *See Kaetz v. TransUnion*, No. 3:05-CV-1545, 2006 WL 8451343, at *3 (M.D. Pa. Apr. 26, 2006) (collecting cases discussing *sua sponte* authority to dismiss claims).

[3]    *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978).

*Pittsburgh*, 89 F.3d 966, 971 (3d Cir. 1996) (a policy is an official proclamation or edict of a municipality, while a custom is a practice that is "so permanent and well settled as to virtually constitute law") (quoting *Andrews v. City of Phila.*, 895 F.2d 1469, 1480 (3d Cir. 1990)) (citations omitted).  A plaintiff must further "allege that a 'policy or custom' of [the defendants] was the 'moving force' behind the [constitutional] violation."  *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 107 (3d Cir. 2002) (citing *Brown*, 520 U.S. at 404).  A municipality can be held liable on the basis of failure to train when "that failure amounts to 'deliberate indifference…[of the constitutional] rights of persons….'"  *Woloszyn v. Cnty. of Lawrence*, 396 F.3d 314, 324 (3d Cir. 2005) (citations omitted).  There must also be a causal nexus, in that the "'identified deficiency in [the] training program must be closely related to the ultimate [constitutional] injury.'"  *Woloszyn*, 396 F.3d at 325 (citations omitted).

Any analysis of a claim under *Monell* requires separate consideration of two distinct issues: "(1) whether plaintiff's harm was caused by a constitutional violation, and (2) if so whether the [municipality] is responsible for that violation."  *Collins v. City of Harker Heights, Texas*, 503 U.S. 115, 120 (1992).  Thus, a municipality or other local government may be liable under this section only if the governmental body itself "subjects" a person to a deprivation of rights or "causes" a person "to be subjected" to such deprivation.  *Connick v. Thompson*, 563 U.S. 51 (2011); *Monell*, 436 U.S. at 692.  However, under § 1983, local governments are responsible only for "their own illegal acts," and "are not vicariously liable under § 1983 for their employees' actions."  *Connick*, 563 U.S. at 60.  Accordingly, plaintiffs

who seek to impose liability on local governments for federal civil rights violations must prove that "action pursuant to official municipal policy" caused the injury complained of. *Connick*, 563 U.S. at 60.

In *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 584 (3d Cir. 2003), the Third Circuit Court of Appeals further explained that there are "three situations where acts of a government employee may be deemed to be the result of a policy or custom of the governmental entity for whom the employee works, thereby rendering the entity liable under § 1983[:]"

> The first is where the appropriate officer or entity promulgates a generally applicable statement of policy and the subsequent act complained of is simply an implementation of that policy. The second occurs where no rule has been announced as policy but federal law has been violated by an act of the policymaker itself. Finally, a policy or custom may also exist where the policymaker has failed to act affirmatively at all, [though] the need to take some action to control the agents of the government is so obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need.

*Natale*, 318 F.3d at 584 (internal quotation marks and citations omitted).

Here, Bacon identifies four alleged policies or customs which he maintains are unconstitutional: (1) a policy that requires individuals accused of PREA violations to be housed in the RHU pending investigation; (2) a policy that does not offer a process to identify pretrial detainees who may "decompensate" in solitary confinement; (3) the lack of a policy that sufficiently protected Bacon from assault by other inmates; and (4) the lack of a

policy requiring a specialized mental health unit for individuals with severe mental illness. (Doc. 78, at 11; Doc. 107, at 7).

### 1. Alleged Placement in Disciplinary Segregation without Due Process

Bacon alleges that Luzerne County has a policy that "requires inmates accused of PREA violations to be held in the RHU pending investigation, even if the claim has no merit and the staff is aware that the claim has no merit." (Doc. 78, at 11). According to the County, because there was no underlying constitutional violation—placement in disciplinary segregation without due process—*Monell* liability cannot lie. (Doc. 90, at 26). The Court construes this claim as a procedural due process claim against Luzerne County with respect to his placement in the RHU from March 31, 2021 through April 23, 2021, and May 14, 2021 through May 28, 2021. (Doc. 78, at 13; Doc. 107, at 8).

Pretrial detainees are protected from "punishment" by the Due Process Clause of the Fourteenth Amendment. *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). Generally, prison officials' "restrictions on pretrial detainees will constitute punishment prohibited by the Due Process Clause when: (1) 'there is a showing of express intent to punish on the part of [those] [ ] officials'; (2) 'the restriction or condition is not rationally related to a legitimate non-punitive government purpose,' i.e., 'if it is arbitrary or purposeless'; or (3) 'the restriction is excessive in light of that purpose.'" *Steele v. Cicchi*, 855 F.3d 494, 504 (3d Cir. 2017) (quoting *Stevenson v. Carroll*, 495 F.3d 62, 67-68 (3d Cir. 2007) (alterations in original)).

"Punishment" in this context refers to "punishment of a pretrial detainee for his alleged criminal conduct, committed *prior* to his detention, for which he has not yet been committed." *Id.* (emphasis in original). It does not refer to punishment of a pretrial detainee "for his in-facility conduct." *Id.* at 505. In other words, "prisons may sanction a pretrial detainee for misconduct that he commits while awaiting trial, as long as it is not a punishment for the 'underlying crime of which he stands accused.'" *Kanu v. Lindsey*, 739 F. App'x 111, 116 (3d Cir. 2018) (quoting *Rapier v. Harris*, 172 F.3d 999, 1003-06 (7th Cir. 1999)). However, while "'pretrial detainees do not have a liberty interest in being confined in the general prison population, they do have a liberty interest in not being detained indefinitely in [disciplinary segregation] without explanation or review of their confinement.'" *Singleton v. Superintendent Camp Hill SCI*, 747 F. App'x 89, 92 (3d Cir. 2018) (*per curiam*) (quoting *Bistrian v. Levy*, 696 F.3d 352, 375 (3d Cir. 2012)).

With respect to pretrial detainees, "the imposition of disciplinary segregation for violation of prison rules and regulations cannot be imposed without providing the due process protections set forth in *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974)." *Kanu*, 739 F. App'x at 116. Such protections "include the right to receive written notice of the charges at least 24 hours before the hearing, the opportunity to present witnesses and documentary evidence, and a written statement of the reasons for the disciplinary action taken and the supporting evidence." *Id.* (citing *Wolff*, 418 U.S. at 563-66).

Fewer due process protections are required for placement in administrative segregation. *Stevenson*, 495 F.3d at 70 (explaining that "greater process [is] accorded to prisoners who are confined for disciplinary infractions than those moved for purely administrative reasons" (alteration added)). This is because "maintaining internal security and order in jails and prisons are 'legitimate governmental objectives'" that may justify placement of a detainee in administrative segregation, and "courts must give prison officials considerable discretion to manage internal security in their institutions." *Steele*, 855 F.3d at 505. In other words, if officials can articulate a legitimate managerial concern for placement of the detainee in restricted housing, a substantive due process claim is foreclosed. *Stevenson*, 495 F.3d at 69 ("Although the substantive and procedural due process evaluations are distinct, a showing by the prison officials that a restrictive housing assignment is predicated on a legitimate managerial concern and is therefore not arbitrary or purposeless, will typically foreclose the substantive due process inquiry"). When a detainee's placement is for administrative purposes, "the minimal procedures outlined in *Hewitt v. Helms*, 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983) are all that is required." *Lewis v. Williams*, No. 05-013, 2011 WL 2441377, at *17 (D. Del. June 13, 2011) (citing *Stevenson*, 495 F.3d at 70). *Hewitt* requires that, within a reasonable time, a detainee be explained the reason for the administrative placement as well as an opportunity to respond. *Steele*, 855 F.3d at 507; *Stevenson*, 495 F.3d at 70 (citations omitted). "[T]he opportunity to respond can be satisfied by written grievances." *Kanu*, 739 F. App'x at 117.

14

In relation to his claims against Luzerne County, Bacon alleges that he was placed in administration segregation for a total of 38 days. (Doc. 78, at 13-14; Doc. 107, at 8). Bacon alleges that he was first placed in the RHU from March 31, 2021 through April 23, 2021, amounting to 24 days, during a PREA investigation. (Doc. 78, at 13; Doc. 107, at 8). He alleges that Defendants Romiski, Aquilla, and Schloss did not provide an explanation for his transfer to the RHU and did not provide him an opportunity to respond to the accusations. (Doc. 78, at 13). On April 23, 2021, Bacon was released after the charges were determined to be unsubstantiated. (*Id.*).

Bacon was again placed in the RHU from May 14, 2021 through May 28, 2021, amounting to 14 days, during a PREA investigation. (*Id.*). He alleges that Defendants Romiski, Kane, Aquilla, Skipalis, Oprishko-Beyer, and Schloss did not provide an explanation for his transfer to the RHU and did not provide him an opportunity to respond until May 27, 2021. (*Id.*). Bacon acknowledges that Defendant Aquilla informed him that he "was under investigation again" but did not explain the nature of the investigation. (*Id.* at 13). On this occasion, Bacon remained in the RHU until May 28, 2021.[4] (*Id.*).

The second amended complaint sufficiently pleads facts that there were no procedural protections to protect Bacon's liberty interests. Specifically, Bacon alleges that

---

[4]    As stated, Bacon also alleges that he was placed in the RHU for a third time from July 2, 2021 through July 9, 2021, under alleged misconduct and PREA investigations. (Doc. 78, at 13; Doc. 107, at 8). Bacon clarifies that he does not bring a procedural due process violation against Luzerne County with respect to this third placement in the RHU; this claim is only set forth against Defendant Mulhorn. (Doc. 107, at 8).

he was placed in the RHU without being provided a reason for the placement or an

opportunity to respond to the accusations. Because the Court finds that, at this stage of the

proceedings, Bacon has plausibly alleged a procedural due process claim with respect to

his placements in the RHU from March 31, 2021 through April 23, 2021, and May 14, 2021

through May 28, 2021, the Court cannot dismiss the derivative *Monell* claim. *See, e.g., City

of L.A. v. Heller*, 475 U.S. 796, 799 (1986) (plaintiff must establish an underlying

constitutional violation to attribute liability to the county); *Mulholland v. Gov't Cnty. of Berks,

Pa.*, 706 F.3d 227, 238 n. 15 (3d Cir.2013) ("It is well-settled that, if there is no violation in

the first place, there can be no derivative municipal claim.").

### 2.    Alleged Failure to Screen Pretrial Detainees with Mental Illness Prior to Placement in Disciplinary Confinement

Bacon next brings a Fourteenth Amendment substantive due process claim against

Luzerne County. (Doc. 78, at 11). In support of this claim, he alleges that "it was both

reckless and negligent" for the prison "to not have a process to identify those inmates and

pre-trial detainees who might disproportionately suffer or decompensate in solitary

confinement and offer alternatives to solitary confinement." (*Id.*).

Defendants argue there is "no jurisprudential authority in this Circuit that a pretrial

detainee with a diagnosed mental condition has a constitutional right to a mental screening

prior to being placed in disciplinary confinement, even when that confinement may include

periods of isolation." (Doc. 90, at 30). They argue further that any claim for the distress

associated with Bacon's placement in disciplinary confinement must be dismissed because

16

he failed to articulate any injury beyond emotional distress, a necessary showing to recover damages under the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(e).  (*Id.* at 29-30).

As stated, institutional security and effective facility management are valid governmental objectives that can justify restrictions on pretrial detainees.  *See Bell*, 441 U.S. at 540.  Such measures are "peculiarly within the province and professional expertise of corrections officials, and, in the absence of substantial evidence…to indicate that the officials have exaggerated their response to these considerations, courts should ordinarily defer to their expert judgment in such matters."  *Bell*, 441 U.S. at 540 n.23; *see also Sandin v. Conner*, 515 U.S. 472, 482-83 (1995) ("[F]ederal courts ought to afford appropriate deference and flexibility to state officials trying to manage a volatile environment.").

Further, "the Due Process Clause does not mandate that…officials use the *least* restrictive means available to accomplish their non-punitive objective."  *Steele*, 855 F.3d at 506 (citing *Bell*, 441 U.S. at 542 n.25; emphasis in original).  "Indeed… '[g]overnmental action does not have to be the only alternative or even the best alternative for it to be reasonable, to say nothing of constitutional.'"  *Steele*, 855 F.3d 494, 506 (quoting *Bell*, 441 U.S. at 542 n.25).  "The central question," therefore, is whether the inmate has "sufficiently alleged that the conditions of his pretrial confinement constituted 'punishment.'"  *Southerland v. Cnty of Hudson*, 523 F. App'x 919, 921-22 (3d Cir. 2013) (*per curiam*).

Bacon alleges that Defendants placed him in administrative segregation pending misconduct and PREA investigations.  He further alleges that the prison should have a policy to screen pretrial detainees suffering from a mental illness prior to placement in segregation.  However, Bacon does not have a protected liberty interest in his security classification or housing preference.  *See, e.g., Stevenson*, 495 F.3d at 69 ("pretrial detainees do not have a liberty interest in being confined in the general population"); *Muslim v. Frame*, 854 F. Supp. 1215, 1227 (E.D. Pa. 1994) ("The United States Constitution does not give the [pretrial detainee] plaintiff a liberty interest in remaining in the general prison population.").

"[T]he ultimate question under *Bell* is whether a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective." *Hubbard v. Taylor*, 538 F.3d 229, 236 (3d Cir. 2008) (quotations omitted).  A detainee's security classification and resulting housing placement is related to the valid government objective of maintaining institutional security, and a detainee's criminal history is relevant to his security classification.  Bacon alleges that Defendants failed to screen pretrial detainees for mental health problems prior to placement in disciplinary segregation.  However, he acknowledges that he was placed in segregation during misconduct and PREA investigations and that he was classified as a maximum-security inmate due to the amount of his bail and history of violent offenses.  (Doc. 78, at 14-15; *see also* Doc. 78, at 12 (alleging that he was not qualified for placement on the "psychiatric block" due to his classification as a "maximum

18

security inmate")).  In short, Bacon has not plausibly alleged his placements in segregation were arbitrary or purposeless restrictions on his liberty, or so excessive as to result in unconstitutional punishment.

With respect to compensatory damages, the PLRA bars such claims for purely emotional distress damages in the absence of any physical injury.  The PLRA states that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e).

Bacon has not alleged that he suffered compensable physical harm.  To the extent that Bacon is attempting to set forth a claim for compensatory damages based upon emotional distress alone, his failure to establish any compensable physical injury resulting from this alleged constitutional infraction precludes any recovery for these damages under the PLRA.[5]  As such, Bacon cannot maintain a *Monell* claim against Luzerne County based on his "decompensation" in disciplinary confinement.

---

[5]   Further, punitive damages are not available against a local government defendant.  It is well-settled that a plaintiff may not seek punitive damages against a municipality.  *See Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981) ("[W]e hold that a municipality is immune from punitive damages under 42 U.S.C. § 1983."); *City of Phila. Office of Hous. & Cmty. Dev. v. Am. Fed'n of State Cty & Mun. Emps, Local Union No. 1971*, 583 Pa. 121, 876 A.2d 375, 378 (Pa. 2005) ("[G]overnment agencies have long been exempt from the imposition of punitive damages.").

### 3. Alleged Lack of Policy to Protect Inmates from Assault by Other Inmates

As a pretrial detainee, Bacon's interests are grounded in either the Fifth Amendment or the Due Process Clause of the Fourteenth Amendment. *Fuentes v. Wagner*, 206 F.3d 335, 367 (3d Cir. 2000). However, the Third Circuit has indicated that the deliberate indifference standard set forth in Eighth Amendment jurisprudence is the appropriate standard in the context of a Fourteenth Amendment failure-to-protect claim. *See A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 587 (3d Cir. 2004). "[T]he Eighth Amendment's Cruel and Unusual Punishments Clause imposes on prison officials 'a duty to protect prisoners from violence at the hands of other prisoners.'" *Bistrian*, 696 F.3d at 366-67 (quoting *Farmer v. Brennan*, 511 U.S. 825, 833 (1994); *see also Beers-Capitol v. Whetzel*, 256 F.3d 120, 130-33 (3d Cir. 2001)). "[A]n unsentenced inmate "is entitled[,] at a minimum, to no less protection than a sentenced inmate is entitled to under the Eighth Amendment." *Bistrian*, 696 F.3d at 352 (citation omitted).

The elements of a failure to protect claim are: (1) the inmate was incarcerated under conditions posing a substantial risk of serious harm; (2) the prison official acted with deliberate indifference to the inmate's health and safety; and (3) the official's deliberate indifference caused the inmate harm. *Bistrian*, 696 F.3d at 367. "'Deliberate indifference' in this context is a subjective standard: the prison official-defendant must actually have known or been aware of the excessive risk to inmate safety." *Id.* (citing *Beers-Capitol*, 256 F.3d at

125). "It is not sufficient that the official should have known of the risk." *Bistrian*, 696 F.3d at 367.

Consequently, prison officials can avoid liability by showing they were unaware of the danger, or they believed the risk was insubstantial or nonexistent. *Bistrian*, 696 F.3d at 367. "In addition, prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* (quoting *Farmer*, 511 U.S. at 844) (internal quotation marks omitted)). Mere negligent conduct that leads to serious injury of a prisoner by a prisoner does not expose a prison official to civil rights liability. *Davidson v. Cannon*, 474 U.S. 344, 347-48 (1986).

Moreover, liability may not be imposed under § 1983 on the traditional standards of respondeat superior. *Capone v. Marinelli*, 868 F.2d 102, 106 (3d Cir. 1989) (citing *Hampton v. Holmesburg Prison Officials*, 546 F.2d 1077, 1082 (3d Cir. 1976)). In *Capone*, the court noted "that supervisory personnel are only liable for the § 1983 violations of their subordinates if they knew of, participated in or acquiesced in such conduct." 868 F.2d at 106 n.7. The plaintiff must allege that the defendant was personally involved in the events or occurrences that underlie the claim. *See Atkinson v. Taylor*, 316 F.3d 257, 270-71 (3d Cir. 2003); *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) ("[a] defendant in a civil rights action must have personal involvement in the alleged wrongs…. [P]ersonal involvement can be shown through allegations of personal direction or of actual knowledge

and acquiescence.  Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity.").

Bacon alleges that prison officials failed to protect him from inmate Pennington and inmate Keziah, who allegedly assaulted him on two separate occasions.  With respect to inmate Pennington, Bacon alleges that Defendants Hall, Richards, Williams, Witkosky, and Steever were "aware of Pennington's severe mental illness which caused him to act violently, often without warning" and knew of the risk to Bacon by placing him in a cell with Pennington.  (Doc. 78, at 8-10).  With respect to inmate Keziah, Bacon alleges that he informed Defendants Witkosky, Steever, Skipalis, and Williams that Keziah threatened him and that he requested a separation from Keziah.  (*Id.* at 9-10).  Bacon alleges that his separation request was ignored.  (*Id.*).

Although Bacon alleges that certain Defendants were aware of specific threats by inmate Keziah and inmate Pennington's violent propensities, he offers no facts to suggest that Luzerne County was aware of any risk to his safety or that it was deliberately indifferent to such a risk.  Where a plaintiff seeks to raise a § 1983 claim against a municipality, such as Luzerne County, the plaintiff must establish that the municipality itself was responsible for the constitutional violation in question, rather than merely asserting that the municipality is responsible for the acts of its employees.  *Los Angeles Cnty. v. Humphries*, 562 U.S. 29, 35-36 (2010) (citing *Monell*, 436 U.S. at 690-91).  A plaintiff will therefore make out a claim against a municipality where he pleads facts showing that the action which violated his

rights "implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated" by the municipality, or was the result of an unofficial custom put into place by the municipality, although that custom may not have been formally adopted by the official decision makers of the municipality. *Id.* at 36 (quoting *Monell*, 436 U.S. at 690-91).

Bacon tries to tie Luzerne County to the individual Defendants' alleged failure to protect him by asserting that the prison's administrative segregation block houses "both individuals who are in fear for their lives as well as individuals who are a threat to the security of the institution." (Doc. 78, at 11). Bacon does not assert that there is a history of incidents involving both types of inmates being housed in administrative segregation, nor a history of attacks such as the one he suffered because of the absence of any policy. Instead, he generally alleges that the mere "presence" of an inmate that poses a threat (such as inmates Pennington and Keziah), "inherently posed a risk to everyone who was in Administrative Segregation." (*Id.* at 11-12). Given these shortcomings, Bacon has not pled facts that would suggest that the need for the vague policy he desires was entirely obvious, nor has he pled facts which would show that the existing practices and policies were obviously inadequate, such that a failure to act on the part of Luzerne County amounted to

deliberate indifference. Therefore, this *Monell* claim against Luzerne County will be dismissed.[6]

### 4. Alleged Lack of Policy Requiring a Specialized Mental Health Unit for Individuals with Severe Mental Illness

Next, Bacon alleges that Luzerne County lacks a specific policy requiring a specialized mental health unit for individuals with a severe mental illness. (Doc. 78, at 12; Doc. 107, at 7). Bacon acknowledges that there was a "psychiatric block," but that he was not qualified to be housed on the block because he was classified as a "maximum security inmate." (Doc. 78, at 12).

First, Bacon admits that the Luzerne County Prison does, in fact, have a "psychiatric block" to house inmates with a mental illness. (*Id.*).

Second, Bacon does not assert that there is a history of inmates with a mental illness housed in administrative segregation being subjected to heightened distress or increased risk of attack by other inmates. Nor does he allege a history of distress or attacks because of the absence of any policy. Thus, Bacon has failed to plead a *Monell* claim with respect to an alleged lack of a policy requiring a specialized mental health unit for individuals with severe mental illness.

---

[6]    Bacon alleges that Defendants Hall, Richards, Witkowsky, Steever, Skipalis, Williams, Sweet, Hrivnak, and Kane were aware of the risk of harm by inmates Pennington and Keziah. (Doc. 78, at 8-10). These Defendants are not currently moving for dismissal of this claim.

C.    Fourteenth Amendment Procedural Due Process Claim

Bacon alleges that Defendants violated the Fourteenth Amendment by placing him in the RHU without procedural due process.  (Doc. 78, at 12-14).  The Fourteenth Amendment prohibits the states from depriving "any person of life, liberty, or property, without due process of law."  U.S. CONST. amend. XIV, § 1.  To assess procedural due process claims, courts analyze (1) whether the state has interfered with a protected liberty or property interest and (2) "whether the procedures attendant upon that deprivation were constitutionally sufficient."  *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989).

As stated *supra*, pretrial detainees do not have a liberty interest in being confined in general population, however, "they do have a liberty interest in not being detained indefinitely in [disciplinary segregation] without explanation or review of their confinement.'"  *Singleton*, 747 F. App'x at 92 (citation omitted).  Within a reasonable time, a pretrial detainee must be provided the reason for the administrative placement and an opportunity to respond.  *Steele*, 855 F.3d at 507; *Stevenson*, 495 F.3d at 70 (citations omitted).

Bacon alleges that he was first placed in the RHU from March 31, 2021 through April 23, 2021, during a PREA investigation.  (Doc. 78, at 13; Doc. 107, at 8).

He was again placed in the RHU from May 14, 2021 through May 28, 2021, during a PREA investigation, at which time Defendants allegedly did not provide him with a reason for the transfer, or an opportunity to respond.  (*Id.*).

Bacon alleges that he was placed in the RHU a third time from July 2, 2021 through July 9, 2021, under alleged misconduct and PREA investigations. (*Id.*). With respect to this third RHU placement, Bacon states as follows:

> Plaintiff does not dispute that written notice of the charges was presented more than 24 hours prior, nor does he dispute that an explanation was provided. A written statement of the reasons for disciplinary action taken was not necessary, because Bacon was not found guilty.

(Doc. 78, at 14). However, he alleges that he was not provided a hearing within a reasonable time, and he was not allowed to present any defense to the charges. (*Id.*).

Bacon has set forth sufficient facts to allege a procedural due process violation, as he demonstrates that his placement in the RHU implicated a constitutionally protected liberty interest, and alleges that he was given no procedural protections before and during his placement in the RHU. *See, e.g., Stuart v. Pierce*, 587 F.Supp.3d 127, 139 (D. Del. 2022) (finding that plaintiff with pre-existing mental health issues was entitled to some amount of process prior to continued detention in solitary confinement). The Court will deny the motion to dismiss the procedural due process claim.

D.    Fourteenth Amendment Substantive Due Process Claim Arising out of the
      Conditions of Confinement

Bacon also alleges a Fourteenth Amendment due process claim based on the conditions of his confinement in segregation. (Doc. 78, at 14-17). Bacon "tends to agree with the Defendants" that "the conditions alleged do not suffice as Constitutional violations

on their own." (Doc. 107, at 9). Rather, Bacon argues that the conditions amount to a constitutional violation when considered in conjunction with his mental health illness. (*Id.*).

When a pretrial detainee claims that the conditions of his confinement violate his due process rights, "the proper inquiry is whether those conditions [at issue] amount to punishment of the detainee." *Bell*, 441 U.S. at 535; *Carson v. Mulvihill*, 488 F. App'x 554, 559 (3d Cir. 2012). A pretrial detainee may not be punished prior to an adjudication of guilt in accordance with due process of law. *Bell*, 441 U.S. at 538-39. However, a pretrial detainee may be subject to "the restrictions and conditions of the detention facility so long as those conditions and restrictions do not amount to punishment, or otherwise violate the Constitution." *Id.* at 536-37. Thus, if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to "punishment." *Id.* at 539.

Accordingly, the standard for determining whether conditions of confinement violate due process is: whether the questioned "restrictions and practices" (1) "are rationally related to a legitimate nonpunitive governmental purpose[,]" and (2) "whether they appear excessive in relation to that purpose." *Carson*, 488 F. App'x at 560 (citing *Bell*, 441 U.S. at 561).

The deliberate indifference standard applies both in cases involving prisoners and pretrial detainees. *Edwards v. Northampton Cnty.*, 663 F. App'x 132, 135 (3d Cir. 2016). "'[D]eliberate indifference' is 'the equivalent of recklessly disregarding [a] risk' of serious

harm to the prisoner." *Gause v. Diguglielmo*, 339 F. App'x 132, 134 (3d Cir. 2009) (quoting

*Farmer*, 511 U.S. at 836).  Further, in *Clark v. Coupe*, 55 F.4th 167 (3d Cir. 2022), the Third

Circuit reasoned that a "pre-existing condition of serious mental illness heightened the

impact of solitary confinement, rendering it capable of inflicting severe mental trauma." *Id.*

at 185.  In other words, the more fragile the inmate's mental health, the more susceptible he

is to harm posed by isolation.

Bacon does not demonstrate how the temporary deprivation of liberty in solitary

confinement amounts to punishment.  Bacon alleges that when he was housed in the RHU,

he was denied commissary privileges, he was not allowed in-person or video visits, he was

allowed limited phone calls, he was placed in a cell with no natural light or outside window,

he was only permitted limited recreation time, he was only permitted to shower a few days

per week, and he was not allowed to use a television, radio, tablet, books, or magazines.

(Doc. 78, at 14-17; Doc. 107, at 8-10).  Bacon's claims about the conditions of his

confinement in the RHU fail.

Bacon has not provided any details surrounding the alleged denial of commissary

privileges, including when they were denied, for how long, whether the deprivation was

sporadic or continuous, whether there was a reason given for the denial, and if he was able

to purchase some items from the commissary but not others.  Based on the allegations of

the second amended complaint, Bacon has failed to establish that the denial of commissary

privileges amounted to punishment under the Fourteenth Amendment.

With respect to limitations on his ability to shower and engage in out-of-cell recreation time, and limited interaction with family members, the facts alleged do not state plausible due process claims.  Bacon alleges that at most, he was deprived shower and recreation time only a few days at a time, and he was provided limited interaction with family members and his attorney.  (Doc. 78, at 16; Doc. 107, at 8-10).  He does not allege an outright denial of these activities.  This does not constitute the type of hardship that amounts to constitutional punishment.  *See, e.g., Fortune v. Hamberger*, 379 F. App'x 116, 122 (3d Cir. 2010) ("Fortune complained of his inability to adequately shower and exercise for a period of fifteen days.  Although it is not clear how many times Fortune believes that he should have been permitted to engage in those activities in addition to the time he was already given to do so, he does not allege that he suffered any harm as a result of the denial of additional showers and exercise.").  Likewise, Bacon's allegation that he was denied leisure activities, such as television, radio, tablet, books, or magazines, does amount to "recklessly disregarding [a] risk' of serious harm to the prisoner."  *Gause*, 339 F. App'x at 134.

The Fourteenth Amendment substantive due process claim will be dismissed.

E.    Claims Against Rockovich, Hyder, Pedri, Crocamo, Mulhorn & Schloss

In the second amended complaint, Bacon sets forth the following allegations against Rockovich, Hyder, Pedri, Crocamo, Mulhorn, and Schloss.

Bacon alleges that Rockovich was the Warden of LCCF and was "in charge of the day-to-day operations at LCCF" and created and enforced policies allowing mentally ill inmates to be placed in solitary confinement. (Doc. 78, at 5). He alleges that Rockovich was aware of Bacon's autism, was aware that Bacon was placed in solitary confinement, and had the authority to remove him from solitary confinement. (*Id.* at 5-6). Rockovich is also alleged to have permitted "predators" like Keziah to be placed in Administrative Segregation with "vulnerable" inmates. (*Id.*).

Bacon alleges that Hyder was the Deputy Warden of LCCF and was "in charge of the day-to-day operations at LCCF" and allowed mentally ill persons to be placed in solitary confinement. (Doc. 78, at 5). He alleges that Hyder was aware of Bacon's autism, was aware that Bacon was placed in solitary confinement, and had the authority to remove him from solitary confinement. (*Id.*). Bacon also alleges that Hyder allowed "predators" like Keziah to be placed in Administrative Segregation with "vulnerable" inmates. (*Id.*).

Bacon alleges that Pedri was the former Luzerne County Manager. (Doc. 78, at 7; Doc. 107, at 17). He asserts that "it is plausible at this stage to presume that Pedri enforced or allowed others to enforce policies that harmed Bacon." (Doc. 78, at 7).

Bacon alleges that Crocamo is the current Luzerne County Manager and was directly in charge of policy decisions at LCCF. (Doc. 78, at 7-8; Doc. 107, at 17). He alleges that "it is plausible at this stage to presume that Crocamo enforced or allowed others to enforce policies that harmed Bacon." (Doc. 78, at 7-8).

Bacon alleges that Mulhorn is the Hearing Examiner at LCCF and "was aware of Bacon's Autism and had the authority to remove Bacon from solitary confinement on July 6, 2021." (Doc. 78, at 7).  He alleges that Mulhorn "impeded Bacon's right to procedural due process, albeit briefly." (*Id.*).

Bacon alleges that Schloss was the PREA Coordinator and was responsible for Bacon's placement in the RHU on March 31, 2021 and May 14, 2021.  (Doc. 78, at 8).  Bacon also alleges that Schloss was "indirectly involved in violating Bacon's due process in the July 2, 2021 placement" and allowed Defendant Aquilla to house Bacon in a cell with Pennington.  (*Id.*).

In general, "a defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable.  *Rode*, 845 F.2d at 1207.  To the extent that Bacon attempts to hold Defendants Rockovich, Hyder, Pedri, Crocamo, Mulhorn, and Schloss liable simply based on their supervisory roles, he cannot do so because liability under § 1983 cannot be predicated on respondeat superior.  *See Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 227 (3d Cir. 2015) ("[Plaintiff] cannot predicate liability on her § 1983 claims on a respondeat superior basis." (citing *Rode*, 845 F.2d at 1207) (emphasis omitted)); *Robinson v. Delbalso*, No. 22-2378, 2022 WL 17248100, at *2 (3d Cir. Nov. 28, 2022) (unpublished) ("We agree with the District Court that Robinson's second amended complaint did not state a plausible claim for relief. First, he failed to allege the defendants' personal involvement, and he cannot predicate liability on his § 1983 claims on a respondeat superior basis."

31

(internal citations omitted)).  Instead, if Bacon is seeking to hold these individuals liable for unconstitutional acts by their subordinates, Bacon's allegations must satisfy one of two theories of supervisory liability: first, "[i]ndividual defendants who are policymakers may be liable under § 1983 if it is shown that such defendants, with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm[;]" and second, "a supervisor may be personally liable under § 1983 if [they] participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in [their] subordinates' violations."  *A.M. ex rel. J.M.K.*, 372 F.3d at 586 (citation omitted); *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014) (explaining requirements for supervisory liability in section 1983 claim and describing "two general ways in which a supervisor-defendant may be liable for unconstitutional acts undertaken by subordinates"), *rev'd on other grounds sub nom.*, *Taylor v. Barkes*, 575 U.S. 822 (2015).

To allege a plausible claim for supervisory liability under the first theory—the policy-and-practice strand of supervisory liability—a plaintiff must:

> (1) identify the specific supervisory practice or procedure that the supervisor failed to employ, and show that (2) the existing custom and practice without the identified, absent custom or procedure created an unreasonable risk of the ultimate injury, (3) the supervisor was aware that this unreasonable risk existed, (4) the supervisor was indifferent to the risk; and (5) the underling's violation resulted from the supervisor's failure to employ that supervisory practice or procedure.  Put another way, the inmate must identify the supervisor's specific acts or omissions demonstrating the supervisor's deliberate indifference to the inmate's risk of injury and must establish a link between the supervisor, the act, and the injury.

*Chavarriaga*, 806 F.3d at 227 (quoting *Brown v. Muhlenberg Twp.*, 269 F.3d 205, 216 (3d

Cir. 2001)).  For the second theory of supervisory liability—participating in, directing others

to, or knowledge and acquiescence of constitutional violation—generalized allegations that

a supervisory defendant is "in charge of" or "responsible for" an office or facility are

insufficient to allege personal involvement in an underlying constitutional violation.  *See*

*Saisi v. Murray*, 822 F. App'x 47, 48 (3d Cir. 2020) ("Saisi asserted that some defendants

were in charge of agencies that allowed this to happen, and that liability stemmed merely

from defendants' 'belief' that their conduct would be 'tolerated.'  However, a director cannot

be held liable 'simply because of [their] position as the head of the [agency].'" (quoting

*Evancho v. Fisher*, 423 F.3d 347, 354 (3d Cir. 2005))); *Zigler v. Warren*, No. 21-cv-19474,

2022 WL 903383, at *2 (D.N.J. Mar. 28, 2022) ("In simpler terms, a supervisor is not liable

for the unconstitutional conduct of his employees solely because he is a supervisor.").

Additionally, "[a]lthough a court can infer that a defendant had contemporaneous knowledge

of wrongful conduct from the circumstances surrounding a case, the knowledge must be

actual, not constructive."  *Chavarriaga*, 806 F.3d at 222 (citing *Baker v. Monroe Twp.*, 50

F.3d 1186, 1194 (3d Cir. 1995); *Rode*, 845 F.2d at 1201 n.6).

### A.    Rockovich, Hyder, Pedri, and Crocamo

Bacon's allegations in the second amended complaint do not state a plausible

supervisory liability claim against Rockovich, Hyder, Pedri, and Crocamo.  It appears that

Bacon wishes to impute liability upon Rockovich and Hyder for creating a policy that allowed

mentally ill individuals to be placed in solitary confinement and for being "aware" that Administrative Segregation was used to house both "predators" and "vulnerable" inmates. (Doc. 78, at 5-6). Bacon failed to allege what specific actions Rockovich and Hyder took or how they assisted in or acquiesced in the violation of his rights.

The second amendment complaint also does not contain sufficient allegations to show that the former and current Luzerne County Managers, Pedri and Crocamo, were personally involved in the alleged violations of Bacon's rights. The pleadings do not allege what specific actions Pedri and Crocamo took or how they assisted in or acquiesced in the violation of his rights.

Thus, the second amended complaint does not allege personal involvement on the part of Rockovich, Hyder, Pedri, and Crocamo that would subject them to liability under § 1983.

### B.    Mulhorn and Schloss

With respect to Defendants Mulhorn and Schloss, Bacon has sufficiently alleged that they were personally involved in the incidents he describes. As outlined above, Bacon alleges that Mulhorn "had the authority to remove Bacon from solitary confinement on July 6, 2021." (Doc. 78, at 7). He alleges that Mulhorn "impeded Bacon's right to procedural due process, albeit briefly." (*Id.*). Bacon then alleges that Schloss was responsible for Bacon's placement in the RHU on March 31, 2021 and May 14, 2021, and allowed Defendant Aquilla to house Bacon in a cell with Pennington. (*Id.* at 8). These allegations

34

are sufficient to show, at this stage, that Defendants Mulhorn and Schloss played a role in his initial placement in solitary confinement or his ongoing confinement in solitary. The motion to dismiss the claims against Mulhorn and Shloss will be denied.

F.    Claims for Declaratory and Injunctive Relief

The case or controversy requirement of Article III, § 2 of the United States Constitution subsists through all stages of federal judicial proceedings. Parties must continue to have a "personal stake in the outcome of the lawsuit." *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477-78 (1990); *Preiser v. Newkirk*, 422 U.S. 395, 401 (1975). The mootness doctrine recognizes that "[i]f developments occur during the course of adjudication that eliminate a plaintiff's personal stake in the outcome of a suit or prevent a court from being able to grant the requested relief, the case must be dismissed as moot." *Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 698-99 (3d Cir. 1996). An inmate's transfer from the facility complained of generally moots the equitable and declaratory claims. *Abdul-Akbar v. Watson*, 4 F.3d 195, 206-07 (3d Cir. 1993); *see Griffin v. Beard*, 401 F. App'x 715 (3d Cir. 2010) (transfer from SCI-Huntingdon renders inmate injunctive relief claim moot).

Bacon is no longer housed at the Luzerne County Correctional Facility, and he agrees that any claims for declaratory relief should be dismissed. (Doc. 107, at 17). In light of Bacon's transfer from Luzerne County Correctional Facility, the institution wherein the

allegations related to his claims stem, his requests for injunctive and declaratory relief are now moot and will be dismissed.

## IV.    Leave to Amend

The Third Circuit has instructed that if a complaint is vulnerable to dismissal for failure to state a claim, the district court must permit a curative amendment, unless an amendment would be inequitable or futile.  *Grayson*, 293 F.3d at 108.  Further, "[a] district court has 'substantial leeway in deciding whether to grant leave to amend.'"  *In re Avandia Mktg., Sales Practices & Prod. Liab. Litig.*, 564 F. App'x 672, 673 (3d Cir. 2014) (quoting *Lake v. Arnold*, 232 F.3d 360, 373 (3d Cir. 2000)).  As set forth above, the Court finds that the following claims are factually and legally flawed, and thus incurable—the claims against LCCF; three of the four *Monell* claims against Luzerne County; the Fourteenth Amendment substantive due process claim; the claims against Rockovich, Hyder, Pedri, and Crocamo; and the claims for declaratory and injunctive relief.  The Court concludes that granting Bacon leave to file a third amended complaint would be both futile and inequitable.  *See Jones v. Unknown D.O.C. Bus Driver & Transp. Crew*, 944 F.3d 478, 483 (3d Cir. 2019) (where inmate plaintiff "has already had two chances to tell his story…giving him further leave to amend would be futile.").

## V.    Conclusion

Consistent with the foregoing, Defendants' motion (Doc. 82) to partially dismiss the second amended complaint will be granted in part and denied in part.  The Court will

dismiss the following claims—the claims against LCCF; three of the four *Monell* claims against Luzerne County; the Fourteenth Amendment substantive due process claim; the claims against Rockovich, Hyder, Pedri, and Crocamo; and the claims for declaratory and injunctive relief. The Court will deny the motion to dismiss with respect to the following claims—one of the *Monell* claims against Luzerne County; the Fourteenth Amendment procedural due process claim; and the claims against Mulhorn and Schloss.

A separate Order shall issue.


Robert D. Mariani
United States District Judge


Dated: June 30, 2025