IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOSHUA DWANE BACON, | : | Civil No. 3:23-cv-1699 |
| Plaintiff | : | |
| v. | : | (Judge Mariani) |
| LUZERNE COUNTY, *et al.*, | : | |
| Defendants | : | |

### MEMORANDUM

Plaintiff Joshua Bacon ("Bacon"), an inmate housed, at all relevant times, at the Luzerne County Correctional Facility ("LCCF"), initiated this civil rights action pursuant to 42 U.S.C. § 1983. (Doc. 1). The matter is proceeding via a second amended complaint. (Doc. 78). The remaining Defendants are Jamie Aquila, William Hall, Officer Hrivnak, Patrick Kane, Christine Oprishko-Beyer, Kaitlynn Romiski, Paul Richards, Officer Skipalis, David Steever, Officer Sweet, James Wilbur, Randal Williams, David Witkowsky, Sean Mulhorn, Samuel Hyder, C. David Pedri, Romilda Crocamo, Mark Rockovich, and Deborah Schloss.

Presently before the Court is Bacon's motion to compel discovery. (Doc. 114). For the reasons set forth below, the motion will be granted in part and denied in part.

### I.  Factual Background

At all relevant times, Bacon was housed as a pretrial detainee at the Luzerne County Correctional Facility. (Doc. 78, at 2). Bacon states that he was diagnosed with autism spectrum disorder and attention deficit hyperactive disorder. (*Id.* at 5).

Bacon first alleges that Defendants failed to protect him from assaults by other inmates. (*Id.* at 8-10). Bacon asserts that he was assaulted on two separate occasions at LCCF. (*Id.* at 8). On April 6, 2021, Bacon alleges that inmate Kyle Pennington assaulted him. (*Id.*). He alleges that Defendants Hall, Richards, Williams, Witkosky, and Steever had personal experiences with Pennington and knew of the risk to Bacon by placing him in a cell with Pennington. (*Id.* at 8-10). Bacon asserts that Defendants Hall and Richards conspired to put him in a cell with Pennington which caused Bacon to "be incarcerated under conditions posing a substantial risk of harm." (*Id.* at p. 9).

On July 2, 2021, Bacon alleges that he was assaulted by inmate Joshua Keziah. (*Id.* at 8). Bacon alleges that he informed Defendants Witkosky, Steever, Skipalis, and Williams that Keziah threatened him and that he requested a separation from Keziah. (*Id.* at 9-10). Bacon alleges that his separation request was ignored. (*Id.*).

Bacon next sets forth a municipal liability claim against Luzerne County. (*Id.* at 11-12). He alleges that Luzerne County has "several unofficial 'customs' and 'practices' that caused his injuries." (*Id.* at 11). Bacon avers that his procedural due process rights were violated because Luzerne County has a policy to place inmates accused of PREA violations in the Restricted Housing Unit ("RHU") while the investigation is pending. (*Id.* at 11). Bacon alleges that his due process rights were violated by Luzerne County in the following ways: (1) LCCF was reckless and negligent in failing to have "a process to identify those inmates and pre-trial detainees who might disproportionately suffer or decompensate in solitary

2

confinement" (*id.*); (2) LCCF uses the Administrative Segregation block to house "both individuals who are in fear for their lives as well as individuals who are a threat to the security of the institution" (*id.*); (3) LCCF does not have separate housing for individuals with mental health issues needing additional care and support (*id.* at 12); and (4) LCCF does not have a policy requiring a specialized mental health unit for individuals with severe mental illness (*id.*; *see also* Doc. 107, at 7).

Bacon next alleges that his placement in the RHU, while suffering a mental impairment, violated his procedural due process rights and constituted an unconstitutional condition of confinement. (Doc. 78, at 12-17). Bacon was placed in the RHU on three separate occasions. (*Id.*). First, on March 31, 2021, Bacon was accused of PREA violations. (*Id.* at 14). Defendants Romiski, Aquilla, and Schloss allegedly ordered Bacon to be placed in the RHU on March 31, 2021. (*Id.*). He alleges that Defendants Romiski, Aquilla, and Schloss did not provide an explanation for his transfer to the RHU and did not provide him an opportunity to respond to the accusations. (*Id.*). On April 23, 2021, Bacon was released from the RHU after the charges were determined to be unsubstantiated. (*Id.*).

Second, on May 14, 2021, Defendants Aquilla and Schloss ordered Bacon to be placed in the RHU, again due to allegations of PREA violations. (*Id.* at 13-15). He alleges that Defendants Romiski, Kane, Aquilla, Skipalis, Oprishko-Beyer, and Schloss did not provide an explanation for his transfer to the RHU and did not provide him an opportunity to respond until May 27, 2021. (*Id.*). Defendant Aquilla did inform Bacon that he "was under

3

investigation again" but did not explain the nature of the investigation. (*Id.* at 13). Bacon remained in the RHU until May 28, 2021. (*Id.*).

Third, on July 2, 2021, Bacon alleges that he was assaulted by inmate Keziah. (*Id.* at 13-15). Also on July 2, 2021, Defendants Witkosky and Steever ordered Bacon to be placed in the RHU under alleged misconduct and PREA violations, despite their purported acknowledgment that "Bacon did not throw any punches" during altercation with inmate Keziah. (*Id.*). Bacon "does not dispute that written notice of the charges was presented more than 24 hours prior, nor does he dispute that an explanation was provided." (*Id.* at 14). He further asserts that "[a] written statement of the reasons for disciplinary action taken was not necessary," because he was found not guilty. (*Id.*). Bacon alleges that he was not provided a hearing on these charges "within a reasonable amount of time." (*Id.*). He asserts that Defendant Hearing Examiner Mulhorn met with him on July 5, 2021 regarding the misconduct for fighting, but Mulhorn did not issue a decision until July 13, 2021. (*Id.*). Bacon further alleges that he was not provided official notice of the PREA violation until July 6, 2021. (*Id.*). Bacon was released from the RHU on July 9, 2021. (*Id.*). With respect to this third placement in the RHU, Bacon alleges that Defendants Williams, Witkosky, Steever, Sweet, Hrivnak, Wilbur, Kane, Schloss, Mulhorn, and Oprishko-Beyer violated his procedural due process rights. (*Id.* at 14).

Bacon asserts that his placements in the RHU amounted to solitary confinement and violated his "substantial liberty interest" because of his "serious mental illness." (*Id.* at 14-15).

During these three periods of time in the RHU, Bacon spent a total of 46 days in solitary confinement. (*Id.* at 15). Bacon alleges as follows:

> While Bacon acknowledges that the placements in solitary confinement may appear relatively brief on the surface, the amount of time placed in solitary confinement is irrelevant, because even one day of solitary confinement under these conditions inherently violated Bacon's Fourteenth Amendment rights in light of his [severe mental illness].

(*Id.* at 15-16, ¶ 19). He alleges that the "above named" Defendants acted "recklessly, negligently, and with deliberate indifference to his qualified [severe mental illness]" by placing him in solitary confinement despite allegedly being aware of his mental health diagnoses. (*Id.* at 15).

Bacon alleges that when he was housed in the RHU, he was confined in a small cell without a window, he was not allowed in-person or video visits, he was allowed limited phone calls and limited recreation time, and he was not allowed to use a television, radio, tablet, personal books, or magazines. (*Id.* at 16).

## II. **Legal Standard**

A party who has received evasive or incomplete discovery responses may seek a court order compelling disclosures or discovery of the materials sought. FED. R. CIV P. 37(a). The moving party must demonstrate the relevance of the information sought to a

particular claim or defense. The burden then shifts to the opposing party, who must demonstrate in specific terms why a discovery request does not fall within the broad scope of discovery or is otherwise privileged or improper. *Goodman v. Wagner*, 553 F. Supp. 255, 258 (E.D. Pa. 1982).

Generally, courts afford considerable latitude in discovery in order to ensure that litigation proceeds with "the fullest possible knowledge of the issues and facts before trial." *Hickman v. Taylor*, 329 U.S. 495, 501 (1947). Federal Rule of Civil Procedure 26(b)(1) provides that a party "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case... Information within this scope of discovery need not be admissible in evidence to be discoverable." FED. R. CIV. P. 26(b)(1). "[A]ll relevant material is discoverable unless an applicable evidentiary privilege is asserted. The presumption that such matter is discoverable, however, is defeasible." *Pearson v. Miller*, 211 F.3d 57, 65 (3d Cir. 2000). Furthermore, the court may limit discovery if the discovery sought is unreasonably cumulative, duplicative, or readily obtainable from some other source, the party seeking discovery has had ample opportunity to obtain the information through discovery, or the proposed discovery is outside the scope permitted by Rule 26(b)(1). FED. R. CIV. P. 26(b)(2)(C).

### III. Discussion

In the instant motion, Bacon takes issue with three of Defendants' responses to his discovery requests. (Doc. 114). The Court will address each request in turn.

#### A. Conflicting Responses Regarding the Pennington Altercation

Bacon first argues that Defendants have provided conflicting responses as to whether there was even an altercation between himself and inmate Pennington. (Doc. 114, at 3-4). He then requests an Order directing Defendants to "turn over any and all records of prior and current arrest records, conviction records, and any other relevant documentation provided by law enforcement agencies related to inmates Joshua Keziah and Kyle Pennington that may aid in his prosecution." (*Id.* at 4). In response, Defendants indicate that they do not have any records of an assault or altercation between Pennington and Bacon on April 6, 2021. (Doc. 115, at 5).

Defendants' conflicting responses are as follows.

In their answer (dated June 18, 2024) to the first amended complaint, Defendants stated, "[i]t is admitted that Bacon was housed with Pennington for a brief period of time in administrative segregation[,]" and "[i]t is admitted that Bacon did suffer injury as a result of his encounter with Pennington." (Doc. 36 ¶¶ 7, 12). In their responses (dated October 17, 2024) to Bacon's requests for admissions, Defendants answered as follows:

> 17. The altercation between PENNINGTON and Bacon was an assault, not a "fight"? In other words, Plaintiff was assaulted by PENNINGTON and did not intentionally or knowingly provoke this assault or engage in a physical altercation with PENNINGTON.

7

> Response: Denied. The nature of the altercation is documented as a fight between the inmates.

(Doc. 114-2 at 5).

However, in their responses (dated January 3, 2025) to Bacon's third request for production of documents, Defendants answered as follows:

> 2. Photographs taken with a handheld digital camera of any wounds, bruises, or other injuries from the 4/6/2021 [ ] [ ] assault by Pennington. These images may have been taken by either medical or prison security staff.
>
> Response: None in the possession of the answering defendants. By way of further answer, there is no documentation that Bacon was assaulted by Pennington on April 6, 2021.
>
> 4. Incident reports of the assault by Pennington on 4/6/2021. These reports may have been written by medical, security or any other employee or contractor of LCCF.
>
> Response: None. By way of further answer, LCCF has no documentation that any assault or altercation occurred between Pennington and Bacon on April 6, 2021. LCCF acknowledges that these two inmates were in the same cell on the date in question or at least for a portion of the date in question.

(Doc. 114-4, at 2).

Defendants admit that their answers are inconsistent. (Doc. 115, at 5). However, they assert that "these apparent inconsistencies cannot be remedied by any further discovery on the point." (*Id.*). Defendants maintain that their records do not reflect an assault or even an altercation between Pennington and Bacon on April 6, 2021. (*Id.*). While it is troubling that Defendants have provided conflicting answers as to whether there was an altercation between Pennington and Bacon on April 6, 2021, the Court is constrained to

8

conclude that such discovery does not exist. As Defendants have asserted that there is no record of this altercation, the Court cannot compel the production of things that do not exist. That said, Defendants are directed to file a sworn affidavit or declaration on the docket attesting to the steps taken to verify that the requested records do not exist.

The Court next considers Bacon's request for a Court Order directing Defendants to "turn over any and all records of prior and current arrest records, conviction records, and any other relevant documentation provided by law enforcement agencies related to inmates Joshua Keziah and Kyle Pennington that may aid in his prosecution." (Doc. 114, at 4). Upon review, Bacon's request is plainly overbroad and unduly infringes upon the privacy interests of other inmates who are entitled to the protection of their personal information. Additionally, as Bacon acknowledges (*see* Doc. 114, at 4), this information is available through other sources. Therefore, Bacon's motion to compel this evidence will be denied.

### B.     Request for Misconduct History of Keziah and Pennington

Bacon requests the misconduct reports of inmates Joshua Keziah and Kyle Pennington. (Doc. 114, at 4-5). In response, Defendants represent they requested the misconduct records of Keziah and Pennington for the dates that Bacon was at the Luzerne County Prison and will provide Bacon with any reports for these two inmates in which Bacon's name appears. (Doc. 115, at 5-6). The Court will accept the representation of defense counsel that Bacon will be provided the relevant misconduct records of inmates Keziah and Pennington. Therefore, the Court will grant this request. In the event that

Bacon has not been provided the relevant misconduct records of these two inmates, he may file a motion for sanctions.

      C.    Request for Video Footage

Bacon also seeks an order to compel Defendants to provide him the relevant footage from the July 2, 2021 incident with inmate Joshua Keziah. (Doc. 114, at 5). He also seeks "a schematic, blueprint, or layout of the cameras on the 5A block, or stock images from the cameras on 5A block." (*Id.*).

Regarding the July 2, 2021 incident, Bacon requested the video footage in his second request for production of documents. (Doc. 114-1, at 4). In response to this request, Defendants indicated that there was no such video. (*Id.*). In Defendants' response to the instant motion to compel, Defendants again assert that the video footage does not exist. (Doc. 115, at 6). The Court cannot compel the production of things that do not exist. Nor can the Court compel the creation of evidence by parties who attest that they do not possess the materials sought. Accordingly, the Court will deny the motion to compel to the extent that Bacon requests an Order directing Defendants to produce video for July 2, 2021. That being said, Defendants are directed to file a sworn affidavit or declaration on the docket attesting to the steps taken to verify that the requested video does not exist.

With respect to Bacon's request for a layout of the cameras on the 5A block or stock images from the cameras on 5A block, the Court will also deny this request. The disclosure of this kind of information poses a great security risk that outweighs any potential relevance

to Bacon's case. Many courts have emphasized the security risks that are apparent from an inmate-plaintiff possessing a floorplan or diagram of the inside of a prison. *See, e.g.*, *Coleman v. Danforth*, 2017 WL 5490918, at *4-5 (S.D. Ga. Nov. 15, 2017) (denying a motion to compel and finding "valid concern[s] regarding the security implications of providing prison schematics to inmates"); *Casey v. Pallito*, 2016 WL 96157, at *6 (D. Vt. Jan. 7, 2016) (denying a motion to compel because "[t]he disclosure of materials revealing the layout of [the prison] would pose security risks"). The Court finds that the above-requested records must be kept confidential in the interests of prison safety and security. Thus, the Court will deny Bacon's motion to compel a blueprint or layout of the cameras on the 5A block or stock images from the cameras on 5A block at LCCF.

## IV. Conclusion

For the foregoing reasons, the Court will grant in part and deny in part Bacon's motion to compel. (Doc. 114). A separate Order shall issue.

Robert D. Mariani
United States District Judge

Dated: January 9, 2026